# EXHIBIT A



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**June 7, 2024 16:19**

Confirmation Nbr. 3188877

DODSWORTH                                    CV 24 998581

vs.

METROHEALTH SYSTEM, ET AL          **Judge:**  JEFFREY P. SAFFOLD

**Pages Filed:**  8

## COMPLAINT

## CUYAHOGA COURT OF COMMON PLEAS OHIO, CUYAHOGA COUNTY

### MICHAEL DODSWORTH
1982 Staunton Rd Cleveland Heights, OH 44118

v

**METROHEALTH SYSTEM**
("METROHEALTH")
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JENNIFER RODGERS** ("RODGERS")
in her official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE  1**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 2**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 3**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 4**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 5**
in her official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 6**
in his/her official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 7**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**DANIELLA CAUDLE** ("CAUDLE") personally
and in her official capacity
2500 Metrohealth Dr, Cleveland, OH 44109

### THE PARTIES

1. At all times relevant herein, Plaintiff was a resident of Cleveland Heights, Cuyahoga County, State of Ohio.

2. At all times relevant herein, METROHEALTH was a public hospital system operating pursuant to Chapter 339 of the Ohio Revised Code. METROHEALTH's main campus is located in Cleveland, Cuyahoga County.

3. METROHEALTH was licensed and/or chartered and/or commissioned to organize a private police force and hire private police officers and uses those police officers to intimidate and control patients.

4. Except where otherwise indicated in this Complaint, the medical and police involved were at all relevant times functioning as employees or agents of METROHEALTH in a way

scope of their employment and therefore pursuant to the *Doctrine of Respondeat Superior*, METROHEALTH is liable for any and all of the intentional, willful, reckless and negligent acts of its employees and/or agents.

## JURISDICTION AND VENUE

5. The facts giving rise to these Causes of Action occurred with the METROHEALTH medical system in Cuyahoga County, Ohio.

6. Jurisdiction is proper in this Court pursuant to R.C. §) 2305, et seq. and R.C. 2307, et. seq.

7. Venue is proper in this Court pursuant to Civ. R. 3(C)(1), 3(C)(2), 3(C)(3), and 3(C)(13).

## FACTS

8. On or about April 11, 2024, Plaintiff was taken by ambulance to the emergency department of METROHEALTH Cleveland Heights from his house in Cleveland Heights after not responding to a welfare check.

9. Plaintiff lived alone with his dog and had been day drinking and consuming THC. The administration of multiple doses of naloxone by the EMS had no effect as Plaintiff had not consumed opiates.

10. Toxicology testing subsequently performed by METROHEALTH showed only the presence of THC, and benzodiazepine which was administered by METROHEALTH.

11. At the time of his admission to METROHEALTH's emergency room, Plaintiff was without shoes, phone, wallet, or watch. He was in his sleepwear and was not wearing underwear.

12. Plaintiff was discharged from METROHEALTH's emergency department on or about 11:00 AM on April 12, 2024.

13. Prior to discharge Plaintiff had heard his former neighbor and his legally separated wife ("Kung") in the hall. Kung sounded emotional and they did not enter Plaintiff's room, but Plaintiff believed his neighbor would return after taking Kung home.

14. At the time of his discharge, Plaintiff told METROHEALTH he would be waiting for his former neighbor to return.

15. Plaintiff remained as he was at admission in his pajamas without shoes, phone, wallet, watch, underwear. Because of his vulnerable state it was impracticable for him to leave the ER, he could not be expected to walk home barefoot.

16. After Plaintiff had been waiting quietly and without disturbance for approximately 90 minutes, he was approached by JOHN DOE 1-3 who were METROHEALTH police officers currently unidentified, and confronted about why he was still in the waiting room. Plaintiff told John Doe 1-3 that he was waiting for a ride.

17. JOHN DOE 1-3 were not satisfied with that response, and other METROHEALTH employees were called to the waiting room, including social worker RODGERS. Plaintiff repeated that he was waiting for his ride and in response to questioning, advised he was not suicidal and had no thoughts of harming anyone.

18. Despite having received answers from Plaintiff, METROHEALTH, RODGERS and JOHN DOE's 1-3 did not disengage and instead remained in close proximity of the Plaintiff, staring, and talking about him.

19. RODGERS appeared to snap after Plaintiff had "covered his mouth" and "mock laughed" at the large group of employees, including METROHEALTH police, congregating and discussing him. RODGERS told JOHN DOE 1-3 to put Plaintiff on a gurney. Plaintiff non-violently resisted by sliding from his seat, where he had remained during the questioning, to sit on the floor.

20. Plaintiff was forcibly lifted from the floor by the arms and legs by JOHN DOE 1-3 and placed on the bed. RODGERS (or other presently unidentified employee) injected the Plaintiff with sufficient benzodiazepine to render him unconscious, and later hallucinate.

21. At no stage did any Defendant offer alternative arrangements such as a taxi, an Uber, or a ride from the police, for the 1.3 miles to Plaintiff's house in Cleveland Heights.

22. The restraint, false imprisonment, battery, and drugging of Plaintiff by METROHEALTH continued daily until Plaintiff was permitted to leave on the evening of 4/22/24.

23. Plaintiff was neither a person subject to a court order under ORC 5122.10, nor a threat to himself or others. All defendants are thereby denied protection under ORC 5122.34.

24. Plaintiff repeatedly verbally and physically demonstrated his awareness of his imprisonment and his desire to be released during the duration of his time in METROHEALTH. METROHEALTH responded by increasing the degree of punishment, force, and humiliation, applied to the Plaintiff.

25. METROHEALTH repeatedly questioned Plaintiff about his mental state while Plaintiff was affected by drugs administered by METROHEALTH. To the extent Plaintiff complied with METROHEALTH instructions it was because METROHEALTH had caused him to have reasonable fear of punishment (including the administration of additional drugs) and further deprivations of liberty, should he increase his resistance.

26. During Plaintiff's false imprisonment his home was burglarized, and property valued in excess of $10,000 stolen.

**FIRST CAUSE OF ACTION**
FALSE IMPRISONMENT, CIVIL ASSAULT AND BATTERY - METROHEALTH, RODGERS (her official capacity), JOHN DOE 1-3 (their official capacity)

27. Plaintiff incorporates paragraphs 8-26 of this Complaint, as though fully rewritten herein.

28. METROHEALTH, RODGERS, and JOHN DOE 1-3, without lawful cause or authority, used physical force to unlawfully restrain, control, batter, and imprison, Plaintiff.

29. Defendants negligently, recklessly, and/or intentionally, engaged in a pattern of outrageous conduct by forcibly removing the Plaintiff from his seat, thereby causing harmful and offensive touching.

30. Plaintiff states Defendants willfully, intentionally, and negligently, confined and restrained Plaintiff.

31. As a direct and proximate result of Defendant's actions, Plaintiff suffered bodily injury, physical pain and discomfort, and emotional distress and anxiety, incurred and will

continue to incur medical and hospital expenses, economic loss, lost wages and lost earning potential, and suffered a loss of enjoyment of life, which will continue into the future.

## SECOND CAUSE OF ACTION
CIVIL BATTERY - METROHEALTH, RODGERS (official capacity)

32. Plaintiff incorporates the proceeding paragraphs 8-26 of this Complaint, as though fully rewritten herein.

33. The forcible and unlawful drugging of Plaintiff with benzodiazepine by Defendant (or other presently unidentified employee) constitutes battery and later caused Plaintiff to hallucinate severely and humiliate himself.

34. As a direct and proximate result of Defendant's actions, Plaintiff suffered bodily injury, physical pain and discomfort, and emotional distress and anxiety, incurred and will continue to incur medical and hospital expenses, economic loss, lost wages and lost earning potential, and suffered a loss of enjoyment of life, which will continue into the future.

## THIRD CAUSE OF ACTION
CIVIL ASSAULT AND BATTERY – METROHEALTH

35. Plaintiff incorporates the proceeding paragraphs 8-26 of this Complaint, as though fully rewritten herein.

36. Without lawful authority Defendant committed civil battery by subjecting Plaintiff to 53 unnecessary medical tests, including shaving his head, and frequent blood draws.

37. Without lawful authority Defendant committed civil battery by daily drugging of Plaintiff.

38. Each individual medical test, blood draw, and drug administration, constitutes a separate incident of battery and an impermissible violation of Plaintiff's bodily autonomy.

39. As a direct and proximate result of Defendant's actions, Plaintiff suffered bodily injury, physical pain and discomfort, and emotional distress and anxiety, incurred and will continue to incur medical and hospital expenses, lost wages and lost earning potential, and suffered a loss of enjoyment of life, which will continue into the future.

## FOURTH CAUSE OF ACTION
CIVIL SEXUAL ASSAULT - METROHEALTH, JOHN DOE 4 (his official capacity)

40. Plaintiff incorporates the proceeding paragraphs 8-26 of this Complaint, as though fully rewritten herein.

41. Plaintiff was placed in an isolation room after he had woken from sedation and attempted to flee the hospital on or about 4/13/24. Without any lawful or medical reason, JOHN DOE 4 a male orderly or nurse of South-East Asian appearance, lifted the waistband of Plaintiff's pants to look at Plaintiff's genitals.

42. As a direct and proximate result of Defendant's actions, Plaintiff emotional distress and anxiety and suffered a loss of enjoyment of life, which will continue into the future.

## FIFTH CAUSE OF ACTION
CIVIL ASSAULT AND BATTERY - METROHEALTH, JOHN DOE 5 (her official capacity), JOHN DOE 7 (his official capacity)

43. Plaintiff incorporates the proceeding paragraphs 8-26 of this Complaint, as though fully rewritten herein.

44. The lights in Plaintiff's room were never turned off and he had been covering his head with a pillowcase to block the fluorescent light.

45. On or about 4/16/24 JOHN DOE 5, a female nurse or doctor currently unidentified, came in and told Plaintiff to remove the pillowcase from his face so she could "draw blood". Plaintiff responded verbally, physically cooperated by making his arm available, and briefly removed the pillowcase to reveal his face, before covering up again.

46. JOHN DOE 5 pulled the pillowcase away from Plaintiff's face at which point he snatched it back. JOHN DOE 5 instructed JOHN DOE 7, a METROHEALTH police officer currently unidentified, to restrain Plaintiff. JOHN DOE 7 jumped on top of Plaintiff and battered Plaintiff by wrestling him and then forcibly strapping Plaintiff's hands and feet to the bed.

47. Defendant's actions caused Plaintiff to reasonably apprehend increased violence if he continued to struggle.

48. Plaintiff's hand restraints were so short, that for the more than 6 hours he was left in this stress position, he could not adjust his body position or scratch his nose.

49. The restraint on Plaintiff's left leg was so tight that the limb has not returned to normal functioning.

50. As a direct and proximate result of Defendant's actions, Plaintiff suffered bodily injury, physical pain and discomfort, and emotional distress and anxiety, incurred and will continue to incur medical and hospital expenses, economic loss, lost wages and lost earning potential, and suffered a loss of enjoyment of life, which will continue into the future.


## SIXTH CAUSE OF ACTION
CIVIL SEXUAL ASSAULT AND BATTERY - METROHEALTH, JOHN DOE 6 (his/her official capacity)

51. Plaintiff incorporates the proceeding paragraphs 8-26 of this Complaint, as though fully rewritten herein.

52. On or about 4/15/24 Plaintiff fainted after a blood draw and a Code Stroke was called by METROHEALTH. Plaintiff regained consciousness to JOHN DOE 6, a METROHEALTH doctor, currently unidentified, twisting his right nipple piercing with extreme force, causing Plaintiff to cry out in substantial pain.

53. Despite having been in the custody and control of METROHEALTH since 4/11/24 with no visitors or access to the outside world, METROHEALTH administered naloxone to Plaintiff.

54. The Defendant's action caused the piercing, which Plaintiff had kept for more than 20 years, would become inflamed and infected and later had to be permanently removed.

55. As a direct and proximate result of Defendant's actions, Plaintiff suffered bodily injury, physical pain and discomfort, and emotional distress and anxiety, incurred and will continue to incur medical and hospital expenses, and suffered a loss of enjoyment of life, which will continue into the future.

## SEVENTH CAUSE OF ACTION
CIVIL BATTERY - METROHEALTH

56. Plaintiff incorporates the proceeding paragraphs 8-26 of this Complaint, as though fully rewritten herein.

57. On or about 4/17/24 Plaintiff was told by Defendant that he could "go down to the psych ward". Plaintiff saw this as a step closer to freedom.

58. On or about 4/17/24 Plaintiff was transferred to the psychiatric ward and ordered to remove all of his body piercings.

59. Plaintiff complied (other than the right nipple which was too inflamed from the battery by John Doe 6).

60. Plaintiff was not able to reinsert the piercings after he arrived back at his home on 4/22/24. Plaintiff had kept these body piercings for more than 20 years.

61. As a direct and proximate result of the defendant's actions, Plaintiff suffered bodily injury, physical pain and discomfort, and emotional distress and anxiety, and suffered a loss of enjoyment of life, which will continue into the future.

## EIGHTH CAUSE OF ACTION
PUBLICATION OF PRIVATE FACTS, INTRUSION ON SECLUSION, FALSE LIGHT, BREACH OF IMPLIED CONTRACT, SLANDER – METROHEALTH, CAUDLE (in her official and individual capacities)

62. Plaintiff incorporates the proceeding paragraphs 8-26 of this Complaint, as though fully rewritten herein.

63. Plaintiff never authorized Defendants to disclose his confidential medical information to Kung and when asked about outside contacts, had advised there was nobody to call.

64. Despite the evidence of Plaintiff, as relayed to Dr DeMichiei and through the toxicology test performed by METROHEALTH, METROHEALTH refused to believe that Plaintiff did not use recreational drugs other than alcohol and THC, and Plaintiff gave up attempting to correct them due to their unwillingness to distinguish between current and past medical history. The apparent "evidential" threshold for these purported medical experts to conclude an opiate overdose was the decision of EMS to administer repeated grams of naloxone to an unconscious person in an emergency situation (in much the same ways as METROHEALTH did during the Code Stroke sexual assault even though Plaintiff had no possible avenue to recreational drugs). Plaintiff did not respond to the naloxone as he was not unconscious due to the ingestion of opiates.

65. Despite knowing Kung was not an authorized person and knowing, or reasonably should have known, that there was a confidential HIPAA obligation to protect patients from the

unauthorized disclosure of confidential information, defendant Caudle without lawful excuse, maliciously, recklessly, and negligently disclosed Plaintiff's confidential medical information and further slandered Plaintiff by providing false and inaccurate information that portrayed Plaintiff in false light.

66. Defendant's false statements were made intentionally, recklessly, and with callous disregard for the rights and safety of Plaintiff and constitute slander *per se*.

67. METROHEALTH as a paid service provider had an implied contractual obligation to protect the privacy of Plaintiff.

68. As a direct and proximate result of Defendant's actions, Plaintiff suffered emotional distress and anxiety, incurred and will continue to incur medical and hospital expenses, economic loss, lost wages and lost earning potential, and suffered a loss of enjoyment of life, irreparable reputational harm, and the destruction of social relationships, which will continue into the future.

## NINTH CAUSE OF ACTION
NEGLIGENCE/RECKLESS SUPERVISION, HIRING, AND/OR TRAINING - METROHEALTH

69. Plaintiff hereby incorporates the proceeding paragraphs 8 through 68 of this Complaint as though fully rewritten herein.

70. Plaintiff states that defendant METROHEALTH were negligent, reckless and/or acted with a conscious disregard in supervising, hiring, and/or training RODGERS, CAUDLE and JOHN DOE's 1-7, as employees and/or agents.

71. The aforesaid actions of Defendant's, either jointly or severally as above alleged, were negligent and/or were done with a willful and/or gross disregard which negligence or gross negligence was direct and proximate cause of the damages herein alleged.

72. As a direct and proximate result of Defendant's actions, Plaintiff suffered bodily injury, physical pain and discomfort, and emotional distress and anxiety, incurred and will continue to incur medical and hospital expenses, lost wages and lost earning potential, and suffered a loss of enjoyment of life, which will continue into the future.

## TENTH CAUSE OF ACTION
PUNITIVE DAMAGES – METROHEALTH, CAUDLE

73. Plaintiff incorporates paragraphs 8-68 of this Complaint, as though fully rewritten herein.

74. As a direct and proximate result of the aforesaid false imprisonment and false light, Plaintiff was and has been unjustly labeled a drug addict, mentally ill and a danger to himself, and has been disgraced, subjected to great embarrassment indignity and humiliation, suffered pain, extreme mental anguish, distress of mind and body has incurred medical bills and has been injured in his good name and reputation either in the community and/or among his friends and/or family, and suffered economic loss, loss of earnings and earning potential all to his damage and injury, and for which he is entitled to compensation.

75. Defendant METROHEALTH's conduct, as set forth above, was particularly egregious, reckless, willful, wanton, and/or malicious, entitling Plaintiff to an award of punitive damages and attorney fees on all the Causes of Action alleged above.

76. Defendant CAUDLE's conduct, as set forth above, was particularly egregious, reckless, willful, wanton, and or malicious, entitling Plaintiff to an award of punitive damages and attorney fees on the Eighth Causes of Action alleged above.

WHEREFORE, Plaintiff demands jury trial and judgment against the Defendants, jointly and severally, in excess of $ 25,000.00 for compensatory damages, and in excess of $25,000 in punitive damages and, in addition, interest, costs, attorney's fees and such further relief as the Plaintiff may be entitled.

REQUEST FOR PRODUCTION OF DOCUMENTS In addition to Plaintiff's request for records on 5/14/24, copies of any and all reports, writings, documents, investigation narratives, drug charts, or other physical item, reflecting any information or statements regarding Plaintiff and/or the within Complaint herein, including but not limited to any Application for Emergency Admission and associated documentation required by statute, verbal discussions between employees and Kung, John Strazzanti, Karyn Perry and ABB, Inc. Copies of any photographs, tape recordings, video recordings, or other images relative to the Plaintiff and/or the within Complaint. Copies of each and every item, document, writing, report, photograph, video, image, recording, or other evidence that you will use or rely upon at trial or other hearing regarding this matter. Copies of each and every store policy or instruction manual regarding the filing of criminal complaints, regarding criminal investigations, regarding investigations of potential shoplifting, and/or regarding any behavior alleged at any time against the Plaintiff herein.

A copy of the complete file relative to Plaintiff including all notes or other contents therein. Copies of or identification of all other discoverable materials, not otherwise specifically requested herein.

Respectfully submitted,

Michael Dodsworth 06/07/2024
Plaintiff (pro se)
dodsworth.michael@gmail.com

Motion No. <u>5183138</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION FOR EXTENSION OF TIME**
**July 15, 2024 17:08**

By: JOHN A. FAVRET III 0080427

Confirmation Nbr. 3219467

DODSWORTH                                    CV 24 998581

vs.

METROHEALTH SYSTEM, ET AL          **Judge:**  JEFFREY P. SAFFOLD

**Pages Filed:**  3

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| MICHAEL DODSWORTH, | ) | CASE NO. CV 24 998581 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY P. SAFFOLD |
| | ) | |
| V. | ) | |
| | ) | **DEFENDANTS' MOTION FOR** |
| METROHEALTH SYSTEM, et al., | ) | **LEAVE TO ANSWER, PLEAD, OR** |
| | ) | **OTHERWISE MOVE IN RESPONSE** |
| Defendants. | ) | **TO PLAINTIFF'S COMPLAINT** |
| | ) | |
| | ) | |

Pursuant to Civ.R. 6(B) and Loc.R. 8.0(D), Defendants MetroHealth System, Jennifer Rodgers, and Daniella Caudle (collectively "Defendants"), respectfully move the Court for a 30-day extension to answer, plead, or otherwise move in response to Plaintiff's Complaint. Plaintiff's Complaint purports to contain 10 causes of action and multiple allegations regarding events that allegedly occurred in April of 2024. Defendants respectfully request additional time to investigate so that they can properly respond to all of the allegations asserted in Plaintiff's Complaint.

Civ.R. 6(B)(1) allows a court at "its discretion, with our without motion or notice" and "for cause shown" to grant an extension if the request "is made before the expiration of the period originally prescribed." *See also* Loc.R. 8.0(D)(2) (allowing extension of time to answer, plead or otherwise move upon leave of the Court). Ohio courts may extend the time to respond to a complaint where the complaint is voluminous and contains multiple allegations requiring extensive investigation. *See, e.g., Serra v. Guita Center, Inc.*, 9th Dist. Lorain No. 16CAA01949, 2017-Ohio-7789, ¶¶8-13 (affirming trial court's granting of motion for extension to respond to complain under Civ.R. 6(B)(1) so the defendant "could further investigate the allegations" due to

"the length of the complaint and the number of claims raised by" the plaintiff). Moreover, the requested extension will not prejudice any party, will serve the interest of justice and judicial efficiency, and will not unduly delay these proceedings. Defendants have not received a prior extension. Before filing this Motion, undersigned counsel reached out to Pro Se Plaintiff seeking a stipulation for leave under Local Rule, and Pro Se declined to stipulate for leave.

For these reasons, Defendants respectfully request a 30-day extension to answer, plead, or otherwise move in response to Plaintiff's Complaint, making the new due date for Defendants' response August 14, 2024.[1]

Respectfully submitted,

*/s/John A. Favret*
John A. Favret (0080427)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    (216) 592-5000
Facsimile:    (216) 592-5009
E-mail:john.favret@tuckerellis.com
*Attorney for Defendants MetroHealth System, Jennifer Rodgers, and Daniella Caudle*

---

[1] By filing this Motion, Defendants do not waive any defenses.

## PROOF OF SERVICE

I hereby certify that on July 15, 2024, a copy of the foregoing ***Motion for Leave to Answer, Plead, or Otherwise Move in to Plaintiff's Complaint*** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties, if any, indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.  Plaintiff is also being served the foregoing, on July 15, 2024, by regular U.S. Mail at the following address:

Michael Dodsworth                                       *Plaintiff*
1982 Staunton Road                                      *Pro se*
Cleveland Heights, OH  44118


/s/ John A. Favret
John A. Favret
*Attorney for Defendants MetroHealth System,
Jennifer Rodgers, and Daniella Caudle*

**Motion No.**  <u>5183307</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**MOTION FOR DEFAULT JUDGMENT**
**July 16, 2024 14:38**

Confirmation Nbr. 3220489

DODSWORTH                                              CV 24 998581

     vs.

METROHEALTH SYSTEM, ET AL                **Judge:**  JEFFREY P. SAFFOLD

**Pages Filed:**  10

# MOTION FOR DEFAULT JUDGMENT
## CUYAHOGA COURT OF COMMON PLEAS OHIO, CUYAHOGA COUNTY

**CV-24-998581**  **JUDGE: JEFFREY SAFFOLD**

### MICHAELDODSWORTH
v

**METROHEALTH SYSTEM** ("METROHEALTH")
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JENNIFER RODGERS** ("RODGERS")
in her official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 1**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 2**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 3**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 4**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 5**
in her official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 6**
in his/her official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**JOHN DOE 7**
in his official capacity
2500 Metrohealth Dr, Cleveland, OH 44109
*and*

**DANIELLA CAUDLE** ("CAUDLE") personally and
in her official capacity
2500 Metrohealth Dr, Cleveland, OH 44109

Now comes, Michael Dodsworth Plaintiff in this case, and moves this Court to enter a judgment by default against the Defendant, and for its motion states:

1. The Defendants were duly served by certified mail on June 15. 2024 with a Summons as provided by law for appearance in this Court, proof of Service being attached hereto and incorporated herein.

2. The Defendants failed to file a written answer within 28 days after service of summons.

3. Plaintiff's damages are unliquidated.

Respectfully submitted,

Michael Dodsworth 07/16/2024 Plaintiff (pro se)

Date Produced: 06/17/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550 0230 71. Our records indicate that this item was delivered on 06/15/2024 at 07:52 a.m. in CLEVELAND, OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :

X _Larry Martz_

Printed Name: _Larry Martzn_

Address of Recipient :

Delivery Address: _2500 Metrohealth Drive_

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Date Produced: 06/24/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550 0230 88. Our records indicate that this item was delivered on 06/17/2024 at 08:58 a.m. in CLEVELAND, OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

**UNITED STATES**
**POSTAL SERVICE.**

Date Produced: 06/17/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550 0231 01. Our records indicate that this item was delivered on 06/15/2024 at 07:52 a.m. in CLEVELAND, OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :

X _Larry North_
Printed Name _LARRY MARTIN_

Address of Recipient :

Delivery Address _2500 Metrohealth Drive_

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Date Produced: 06/17/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550 0231 18. Our records indicate that this item was delivered on 06/15/2024 at 07:52 a.m. in CLEVELAND, OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Date Produced: 06/17/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550
0231 25. Our records indicate that this item was delivered on 06/15/2024 at 07:52 a.m. in CLEVELAND,
OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

**UNITED STATES**
**POSTAL SERVICE.**

Date Produced: 06/17/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550 0231 32. Our records indicate that this item was delivered on 06/15/2024 at 07:52 a.m. in CLEVELAND, OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :

X *Larry Martin*

Printed Name: *Larry Martin*

Address of Recipient :

Delivery Address: *2500 Metrohealth Drive*

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Date Produced: 06/17/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550 0231 49. Our records indicate that this item was delivered on 06/15/2024 at 07:52 a.m. in CLEVELAND, OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Date Produced: 06/17/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550 0231 56. Our records indicate that this item was delivered on 06/15/2024 at 07:52 a.m. in CLEVELAND, OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :

X _Larry Martin_

Printed Name: LARRY MARTIN

Address of Recipient :

Delivery Address: 2500 Metrohealth Drive

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

**UNITED STATES**
**POSTAL SERVICE.**

Date Produced: 06/17/2024

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3550 0231 63. Our records indicate that this item was delivered on 06/15/2024 at 07:52 a.m. in CLEVELAND, OH 44109. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



183978446

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

DODSWORTH
    Plaintiff

Case No: CV-24-998581

Judge: JEFFREY P SAFFOLD

METROHEALTH SYSTEM, ET AL
    Defendant

## <u>JOURNAL ENTRY</u>

DEFENDANTS' MOTION FOR LEAVE TO ANSWER, PLEAD, OR OTHERWISE MOVE IN RESPONSE TO PLAINTIFF'S COMPLAINT, FILED 07/15/2024, IS GRANTED. DEFENDANTS ARE GRANTED LEAVE TO MOVE, ANSWER OR OTHERWISE PLEAD TO PLAINTIFF'S COMPLAINT UNTIL 08/14/2024.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, FILED 07/16/2024, IS DENIED.

THIS ORDER SHALL NOT PRECLUDE PLAINTIFF FROM RE-FILING A MOTION FOR DEFAULT JUDGMENT IF DEFENDANTS FAIL TO TIMELY RESPOND TO PLAINTIFF'S COMPLAINT.

IT IS SO ORDERED.

_____

Judge Signature          07/17/2024

07/16/2024

**Motion No.** <u>5189741</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION TO DISMISS**
**August 14, 2024 17:13**

By: JOHN A. FAVRET III 0080427

Confirmation Nbr. 3246923

MICHAEL DODSWORTH                    CV 24 998581

      vs.

METROHEALTH SYSTEM, ET AL            **Judge:** JEFFREY P. SAFFOLD

**Pages Filed:** 11

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| MICHAEL DODSWORTH, | ) | CASE NO. CV 24 998581 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY P. SAFFOLD |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS' MOTION TO** |
| METROHEALTH SYSTEM, et al., | ) | **DISMISS PLAINTIFF'S COMPLAINT** |
| | ) | **AND STAY DISCOVERY** |
| Defendants. | ) | |
| | ) | |
| | ) | |

Defendants MetroHealth System, Daniella Caudle, MD, and Jennifer Rodgers, MSW, LSW (collectively "MetroHealth Defendants"), by and through counsel, respectfully move the Court to dismiss Plaintiff's Complaint in its entirety pursuant to Ohio Civ. R. 12(B)(6). As set forth in more detail below, Plaintiff has failed to establish the adequacy of his *medical claims* against the MetroHealth Defendants with an affidavit of merit, as required by Civ. R. 10(D)(2). Such a failure warrants dismissal of Plaintiff's Complaint, without prejudice.

To prevent unwarranted expenditure of resources at this time, MetroHealth Defendants also respectfully request that the Court stay discovery until resolution of this Motion, either by dismissal of Plaintiff's Complaint or until Plaintiff provides the necessary affidavit of merit by a date to be set by the Court.[1] A Memorandum in Support is attached hereto and incorporated by reference.

---

[1] Pursuant to Plaintiff's prior request in the litigation, undersigned counsel has produced Plaintiff's MetroHealth medical chart for the time period alleged in the Complaint.

Respectfully submitted,


/s/John A. Favret
John A. Favret (0080427)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    (216) 592-5000
Facsimile:    (216) 592-5009
E-mail:john.favret@tuckerellis.com
*Attorney for Defendants MetroHealth System, Jennifer*
*Rodgers, and Daniella Caudle*

## <u>MEMORANDUM IN SUPPORT</u>

## I.   INTRODUCTION & STATEMENT OF THE PERTINENT ALLEGATIONS SET FORTH IN PLAINTIFF'S COMPLAINT

All "[t]he facts giving rise" to Plaintiff's claims in the Complaint occurred at defendant MetroHealth's medical system surrounding the time of Plaintiff's admission to the emergency department, and his involuntary admission to the hospital and the psychiatric ward from April 11, 2024, through April 22, 2024. *See generally* Compl., including ¶¶ 2, 4-5, 8, 22, 41, 58, 60.[2] More specifically, Plaintiff presented to the emergency department at MetroHealth on April 11 following "day drinking and consuming THC." ¶ 9.  The medical professionals believed Plaintiff had overdosed on opiates and administered multiple doses of naloxone. *Id.* at ¶¶8-10, 53, 64. At the emergency department, MetroHealth personnel administered benzodiazepine and undertook toxicology testing. *Id.* at ¶10.

On April 12, in the waiting room of the emergency department during Plaintiff's discharge, Plaintiff was approached by MetroHealth police officers and then questioned repeatedly by MetroHealth medical personnel, including defendant social worker Rodgers, about Plaintiff's mental state.  *Id.* at ¶¶17, 19.  MetroHealth's social worker Rodgers instructed the police to put Plaintiff on a gurney where he remained during questioning, and then Rodgers injected Plaintiff with benzodiazepine rendering Plaintiff unconscious. *Id.* at ¶19. Plaintiff was involuntarily

---

[2] While Defendants have filed this Motion to Dismiss in lieu of an Answer, and while for purposes of this Motion ONLY the facts are taken as admitted per Civ. R. 12(B)(6) (*See State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs*, 65 Ohio St.3d 545, 548 605 N.E.2d 378 (1992), Defendants otherwise affirmatively deny any and all allegations asserted against them, including any allegations of medical negligence or otherwise wrongdoing. Further, Defendants' affirmatively assert that one or more of Plaintiff's claims fail to state a claim upon which relief may be granted against the Defendants. Moreover, Defendants assert they are entitled to good faith immunity under R.C. 5122.34.

admitted to the hospital and psychiatric ward until being discharged home on April 22, 2024.
*See generally* Complaint, including ¶¶12, 19-20 25, 41, 58.

In a nutshell, Plaintiff's various causes of action against the MetroHealth defendants all arise out of actions during the course of Plaintiff's medical care and treatment while at MetroHealth, including the medical decision to involuntarily admit Plaintiff to the hospital, as Plaintiff reveals in the allegations outlined above and in his purported *Causes of Actions* outlined below:

- *First Cause of Action* (False Imprisonment, Civil Assault and Battery - against MetroHealth & Rodgers & John Does 1-3): Plaintiff asserts MetroHealth personnel, including social worker Rodgers, unlawfully restrained him and forcibly removed him from his seat during questioning about his mental state at the time of his involuntary hospital admission resulting in injury. *See* Complaint, First Cause of Action ¶¶27-31; *see also* generally Complaint, including ¶¶19-22.

- *Second Cause of Action* (Civil Battery – against MetroHealth & Rodgers): Plaintiff asserts MetroHealth personnel, including Social Worker Rodgers, unlawfully administered benzodiazepine resulting in injury. *See* Complaint, Second Cause of Action ¶¶32-34.

- *Third Cause of Action* (Civil Assault & Battery – against MetroHealth): Plaintiff asserts MetroHealth unlawfully subjected Plaintiff to 53 unnecessary medical tests, frequent blood draws, and drug administration resulting in injury. *See* Complaint, Third Cause of Action ¶¶35-39.

- *Fourth Cause of Action* (Civil Sexual Assault – MetroHealth & John Doe 4): During hospitalization, Plaintiff asserts he awoke from sedation in an isolation room in the hospital, and a MetroHealth orderly or nurse unlawfully lifted the waistband of Plaintiff's pants resulting in emotional distress. *See* Complaint, Fourth Cause of Action ¶¶40-42.

- *Fifth Cause of Action* (Civil Assault and Battery – against MetroHealth & John Doe 5 and 7): Plaintiff asserts a MetroHealth nurse or doctor took a blood draw while a MetroHealth police officer restrained Plaintiff resulting in injury. *See* Complaint, Fifth Cause of Action ¶¶43-50.

- *Sixth Cause of Action* (Civil Assault and Battery – against MetroHealth & John Doe 6): Plaintiff asserts he fainted following a blood draw and a "Code Stroke" was called during which time a MetroHealth doctor twisted his piercings, and MetroHealth also administered naloxone, resulting in injury. *See* Complaint, Sixth Cause of Action ¶¶51-55.

- *Seventh Cause of Action* (Civil Battery – against MetroHealth): Plaintiff asserts he was transferred to the psychiatric ward where he was ordered to remove all of his body piercings, he was not able to reinsert them after he was discharged home on 4/22/24, and thus as a result there was injury.  *See* Complaint, Seventh Cause of Action ¶¶56-61.

- *Eighth Cause of Action* (Publication of Private Facts, Intrusion on Seclusion, False Light, Breach of Implied Contract, Slander – Against MetroHealth and Caudle): While at MetroHealth and during the time MetroHealth Defendants were in the process of identifying Plaintiff's mental condition, Plaintiff asserts that MetroHealth's Caudle disclosed Plaintiff's confidential medical information to Plaintiff's "legally separated wife Kung", and Plaintiff further asserts by implication that the medical personnel at MetroHealth believed that Plaintiff had been recently using recreational drugs or opiates and relayed that information to Kung resulting, in part, emotional distress and reputational harm. *See* Complaint, Eighth Cause of Action ¶¶62-68; *see generally* Compl., including ¶5 (the facts giving rise to these Causes of Action occurred with the MetroHealth medical system") ¶25 ("MetroHealth repeatedly questioned Plaintiff about his mental state").

- *Ninth Cause of Action* (Negligence/Reckless Supervision, Hiring, And/or Training – against MetroHealth): Plaintiff asserts MetroHealth was negligent in supervising, hiring, and training MetroHealth personnel resulting in the negligence asserted in prior causes of action in the Complaint resulting in injury. *See* Complaint, Ninth Cause of Action ¶¶69-72.

- Tenth Cause of Action (Punitive Damages – against MetroHealth & Caudle): Plaintiff asserts MetroHealth's conduct, including labeling him a drug addict and mentally ill and a danger to himself by involuntarily admitting him to the hospital and psychiatric ward, resulted in injury and damages. *See* Complaint, Tenth Cause of Action ¶¶73-76; *see generally* Compl.

Given that Plaintiff's allegations are against a hospital an arise out of actions during the course of his medical care and treatment at MetroHealth, it is clear that the Complaint asserts *medical claims* pursuant to R.C. 2305.113(E)(3). Accordingly, Civ. R. 10(D) requires Plaintiff to file and affidavit of merit to establish the adequacy of his claims against MetroHealth defendants. Plaintiff has failed to attach an affidavit of merit to his Complaint as is required by Civ. R. 10(D)(2)(a), and he has also failed to file a motion seeking an extension of time in which to submit an Affidavit of Merit as Required by Civ. R. 10(D)(2)(b). Thus, Plaintiff has not complied with the requirements of Civ. R. 10(D)(2), and the Complaint must be dismissed.

## II.  LAW AND ARGUMENT

### A.  <u>Plaintiff's Complaint Consists Of Medical Claims.</u>

Under the plain and unambiguous language of R.C. 2305.113(E), Plaintiff has asserted medical claims against the MetroHealth Defendants.  R.C. 2305.113(E)(3) defines medical claims to include any claim against a hospital arising out of the diagnosis, care, or treatment of any person:

> "Medical claim" means **any claim that is asserted in any civil action against a** physician, podiatrist, **hospital,** home, or residential facility, **against any employee or agent of** a physician, podiatrist, **hospital,** home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and **that arises out of the medical diagnosis, care, or treatment of any person.**

> (emphasis added).

The Supreme Court of Ohio elaborated on this definition in *Browning v. Burt,* 66 Ohio St.3d 544, 556-557, 613 N.E.2d 993, 1003 (1993). There, the Court established that "the terms `medical diagnosis' and `treatment' are terms of art, having a specific and particular meaning relating to the identification and alleviation of a physical or mental illness, disease, or defect." *Id.* at ¶¶ 10-11. Generally, Ohio courts have liberally construed what constitutes a "medical claim" under the statute. *See, e.g., Ratcl<sub>i</sub>fe v. University Hospitals Cf Cleveland*, 8th Dist. Cuyahoga No. 61791, 1993 WL 69553, at *304 (Mar. 11, 1993) (holding claims against hospital for battery, fraud, deceit, and breach of fiduciary duty claims were medical claims); *Singh v. Cleveland Clinic Found,* 8th Dist. Cuyahoga No. 99066, 2013-Ohio-2465 (finding a negligent infliction of emotional distress action to be a derivative medical claim under R.C. 2305.113); *Chromik v. Kaiser Permanente,* 8th Dist. Cuyahoga No. 89088, 2007-Ohio-5856 (finding a wrongful death and survivorship action to be a medical claim under O.R.C. 2305.113); *Rogers v.*

*Genesis Healthcare System, Inc.*, 5th Dist. Muskingum No. CT2015-0030, 2016-Ohio-721, 5, 26-28 (holding claim against negligent understaffing, among others, were medical claims); *Amadasu v. O'Neill*, 176 Ohio App.3d 217, 2008-Ohio-1730, 2, 89 (1st Dist.) (holding claims against hospital for assault and battery, breach of fiduciary duty and violations of CSPA were medical claims). This principle applies to all services actually performed during the physician-patient relationship, "whether purely medical or administrative in nature." *Hefner v. Reynolds,* 149 Ohio App. 3d 339, 342, 2002-Ohio-4655, 777 N.E.2d 312, ¶ 6 (6th Dist.); citing *Burnside v. Leimbach,* 71 Ohio App.3d 399, 403, 594 N.E.2d 60 (10th Dist.1991); *Singh v. Cleveland Clinic Found.,* 8th Dist. Cuyahoga No. 99066, 2013-Ohio-2465, at ¶ 5 (noting that "the essential claim of appellants' complaint is one of medical malpractice, regardless of how the claim is characterized."). As shown above, the plain language of the statute and the application of well-settled case law confirm that Plaintiff asserts medical claims in the Complaint.

**B. <u>Plaintiff's Complaint Containing Medical Claims Must Be Dismissed Without An Affidavit Of Merit.</u>**

The Supreme Court of Ohio has recognized recognized that medical claims are subject to a heightened pleading standard. *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 12. Civil Rule 10(D)(2) requires that a plaintiff attach an Affidavit of Merit to the complaint when filing suit on a medical liability claim. Civil Rule 10(D)(2) provides as follows:

(1)     *Affidavit of Merit; medical liability claim.*

(a)  Except as provided in division (D)(2)(b) of this rule, a complaint that contains **a medical claim**, dental claim, optometric claim, or chiropractic claim, as defined in section 2305.113 of the Revised Code, ***shall include an affidavit of merit* relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability.** The affidavit of merit shall be provided by an expert witness pursuant to Rules 601(D) and 702 of

the Ohio Rules of Evidence. The affidavit of merit shall include all
of the following:

     (i)  A statement that the affiant has reviewed all
medical records reasonably available to the plaintiff concerning
the allegations contained in the complaint;

     (ii)  A statement that the affiant is familiar with the
applicable standard of care;

     (iii)  The opinion of the affiant that the standard of care
was breached by one or more of the defendants to the action
and that the breach caused injury to the plaintiff.

     (b)     The plaintiff may file a motion to extend the period
of time to file an affidavit of merit. *The motion shall be filed
by the plaint<sub>i</sub>f with the complaint.* For good cause shown, the
court shall grant the plaintiff a reasonable period of time to file
an affidavit of merit.

     (c)     An affidavit of merit is required solely to establish
the adequacy of the complaint and shall not otherwise be
admissible as evidence or used for purposes of impeachment.

Civ.R. 10(D)(2)(a) (emphasis added). The affidavit of merit addresses the sufficiency of the

complaint because it establishes the adequacy of the allegations contained therein. Civ.R.

10(D)(2)(d); *Fletcher*, 2008-Ohio-5379, ¶¶ 10, 13. Thus, when a plaintiff fails to attach an

affidavit of merit, the complaint is insufficient as a matter of law. (*Id.*)

In the event that a plaintiff cannot comply with Civ.R. 10(D)(2)(a) at the time of filing a

medical claim, Civ.R. 10(D)(2)(b) permits the plaintiff to file in its place a motion to extend the

period of time to file the affidavit of merit. Under the mandatory language of the rule, however,

the motion *must* be filed contemporaneously with the complaint and *must* be supported by good

cause. Civ.R. 10(D)(2)(b). A complaint that does not have an Affidavit of Merit or a motion to

extend the period of time to file the Affidavit of Merit attached at the time of filing does not

comply with Civ.R. 10(D)(2) and is subject to dismissal. Civ.R. 10(D)(2)(d); *Fletcher*, 2008-

Ohio-5379, ¶ 13. *See also*, Troyer v. Janis, 132 Ohio St.3d 229, 231, 971 N.E.2d 862 (2012) (finding dismissal is the proper remedy when there is no affidavit of merit attached to a medical claim); *Beegle v. South Pointe Hosp.*, 8th Dist. No. 96017, 2011 WL 2899612 (July 21, 2011) (ruling that the heightened pleading standards for medical claims warrant dismissal where the complaint is not accompanied by an affidavit of merit).  A dismissal for failure to comply with the Rule operates as a dismissal otherwise than on the merits. Civ.R. 10(D)(2)(d).

In this case, Plaintiff did not submit an affidavit of merit with the filing of his Complaint and he failed to seek an extension of time to do so.  Thus, Plaintiff has not complied with Civ. R. 10(D)(2).  Therefore, Plaintiff's Complaint containing medical claims should be dismissed without prejudice.

### III. CONCLUSION

In this case, Plaintiff has pled medical claims against MetroHealth Defendants but failed to attach an affidavit of merit supporting his claims pursuant to Civ.R. 10(D)(2).  Plaintiff has, therefore, failed to state a claim against MetroHealth Defendants.  For the foregoing reasons, MetroHealth Defendants respectfully requests dismissal of Plaintiff's Complaint pursuant to Civ.R. 12(B)(6), without prejudice.

Further, to prevent unnecessary discovery costs and expenses at this time, MetroHealth Defendants also respectfully request that the Court stay discovery until resolution of this Motion, either by dismissal of Plaintiff's Complaint entirely or until Plaintiff provides the necessary affidavit of merit by a date to be set by the Court.

Respectfully submitted,

/s/John A. Favret
John A. Favret (0080427)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:     (216) 592-5000
Facsimile:     (216) 592-5009
E-mail:john.favret@tuckerellis.com
*Attorney for Defendants MetroHealth System, Jennifer Rodgers, and Daniella Caudle*

**<u>PROOF OF SERVICE</u>**

I hereby certify that on August 14, 2024, a copy of the foregoing ***Defendants' Motion to Dismiss Plaintiff's Complaint and Stay Discovery*** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties, if any, indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

Michael Dodsworth                                    *Plaintiff*
dodsworth.michael@gmail.com              *Pro se*


                                                                   /s/ John A. Favret
                                                                   John A. Favret
                                                                   *Attorney for Defendants MetroHealth System,*
                                                                   *Jennifer Rodgers, and Daniella Caudle*



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**OBJECTION ...**
**August 25, 2024 21:23**

Confirmation Nbr. 3255533

MICHAEL DODSWORTH                           CV 24 998581

      vs.

METROHEALTH SYSTEM, ET AL          **Judge:** JEFFREY P. SAFFOLD

**Pages Filed:** 9

**CUYAHOGA COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY OHIO**

CV-24-998581                                         **JUDGE: JEFFREY SAFFOLD**

OBJECTION TO DEFENDANTS'
MOTION TO DISMISS AND STAY
DISCOVERY

**MICHAEL DODSWORTH**
Plaintiff
v.
**METROHEALTH SYSTEM, et al.,**
Defendants

Plaintiff objects to defendants MetroHealth System, Daniella Caudle, and Jennifer Rodgers, (collectively, "Defendants") Motion to Dismiss ("Motion") dated 14 August. 2024, under Ohio Civ. R. 12(B)(6) on the basis that Plaintiff did not file a Civ. R. 10(D)(2) ("Rule 10") affidavit of merit with his Complaint. Plaintiff states his Complaint does not in substance allege *medical claims*, instead it is predicated on negligence *per se* for violation of R.C. 5122.10 and that consequently, the activities of the Defendant did not constitute medical care within the meaning of pursuant to R.C. 2305.113(E)(3).

1. **The Defendant's Motion**

It has long been part of the legal landscape that the involuntary deprivation of personal liberty should only occur in limited circumstances. This principle is reflected in the requirement that emergency involuntary admission to hospital be performed in compliance with R.C. 5122.10.

R.C. 2305.113(E)(3) defines medical claims as:

"…any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and **that arises out of the medical diagnosis, care, or treatment of any person**." [emphasis added]

If it is a medical claim, Rule 10 requires a plaintiff produce "one or more affidavits of merit relative to each defendant named in its complaint for whom expert testimony is necessary to establish liability". Defendant moves for dismissal on the basis that Plaintiff did not attach an affidavit of merit or request for extension of time with his complaint.

## 2. Violation of R.C. 5122.10 is Negligence Per Se

Contrary to Defendant's Motion, its actions giving rise to the Complaint occurred in the hospital waiting room in circumstances where the Plaintiff had been discharged following an overnight stay, meaning there was no pre-existing legal relationship with for the voluntary or involuntary administration of medical care. The Plaintiff was not a patient who was already receiving medical care at the time his detention was effected.

In order to recover in negligence a plaintiff must prove (1) the defendant owed it a duty, (2) the defendant breached that duty, and (3) that the breach was the proximate cause of the plaintiffs injury, *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 108-109, 51 O.O. 27, 30, 113 N.E.2d 629, 632. Typically, duty is established by common law, legislative enactment, or the particular facts and circumstances of the case, *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440 ("Eisenhuth").

Plaintiff assets the legislative intent of 5122.10 is to provide for the rights and safety of individuals subject to involuntary emergency admission and potentially medical procedures and to protect society from mentally ill individuals who might otherwise inflict harm or injury. There is no "good faith" defense available if a defendant breaks the law by failing to comply with R.C. 5122.10. In *Chambers v. St. Mary's School,* 82 Ohio St. 3d 563, the court said, **"**Where a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence per se".

Plaintiff submits that emergency hospitalization under R.C 5122.10 is a statute for the purposes of safety, as the protection of the individual and the public is the justification for the revocation of an individual's autonomy. That violation of a legislative enactment of safety can constitute negligence *per se* is predicated upon the principle that when an act is forbidden by express provisions of law, and an absolute standard of conduct is set up, that one who violates an express provision of the enactment resulting in injury will be deemed to be liable regardless of whether the injury might have been foreseen by a reasonably prudent person *Butts* v. *Ward,* 227 Wis., 387, 279 N. W., 6, 116 A. L. R., 1441.

Although negligence *per se* proves breach of an existing duty, a plaintiff must still prove proximate cause and damages. Accordingly, for a plaintiff to claim negligence *per se*, it must present evidence that (1) there is a legislative enactment that imposes a specific duty upon the defendant for the safety and protection of a person in plaintiff's position; (2) the defendant failed to observe the enactment; and (3) that failure proximately caused his or her injury, *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 362.

Not all statutes pertaining to safety constitute negligence *per se* when violated and the question in the present turns on whether the enactment imposed a fixed and absolute duty in relation to the privilege claimed by Defendant over the involuntary admission of the Plaintiff. The *Eisenhuth* court said that if the statutory standard of conduct is fixed and absolute, it is final and conclusive on the question of civil liability, except where the enactment is so vague or so dependent upon a variety of facts and circumstances as to require definition by a

court or jury before it may be applied to the facts of a particular case. For example, in *Becker v. Shaull* (1992), 62 Ohio St.3d 480, the Supreme Court determined that R.C. 5589.06, which provided "No person shall wrongfully obstruct any ditch, drain, or watercourse along, upon, or across a public highway" was a statute for safety, but that its wording required the consideration of more than a single issue of fact and as such imposed only a general duty and could not constitute negligence *per se*. Plaintiff was unable to locate case law dealing specifically with the question of negligence *per se* and R.C. 5122.10, however posits that R.C. 5122.10, is significantly more prescriptive and complete than the general standard imposed by statues such as R.C. 5589.06.

Plaintiff agrees Defendant's Admission note dated 1:16pm on 12 April, 2024 (the "Note") documenting the detention of the Plaintiff is accurate. The records of the Defendant and the evidence of the Plaintiff, agree that the Plaintiff was detained involuntarily, and that consequential to that detainment he was subjected to various medical procedures and interactions with Defendant. If R.C. 5122.10 is a safety statute imposing a complete and fixed duty in relation to persons in the position of the Plaintiff, then the finder of fact need only determine whether or not the Defendant complied with it to determine liability for false imprisonment and the legal characterization of the interactions that followed.

R.C. 5122.10(A)(1)  requires an authorized person performing an involuntarily admission to have a "…reason to believe that a person is a person with a mental illness subject to court order and represents a substantial risk of physical harm to self or others if allowed to remain at liberty… [and if so, can] take the person into custody and may immediately transport the person to a hospital". Relevant to an evaluation of the duty imposed under statute, Plaintiff notes that the list of authorized persons includes nurses and doctors with medical qualifications (but not psychiatry or psychology qualifications), psychiatrists (who are required to have both a general medical qualification and a psychiatric qualification), psychologists (who are required to have a psychology qualification but not a medical qualification),  and other occupations where neither a medical or mental health qualification is required[1]. It does not differentiate between, or leave open the duty and evidential burden based on whether the authorized person had a medical background or was a parole officer. Although it was Defendant Rodgers who effect the detention of the Plaintiff, the exact same outcome in the same setting could have been created by Defendant's police under R.C. 5122.10 without the involvement of medical staff. Thus, a determination that a person "…is a person with a mental illness subject to a court order" who represent a substantial risk of physical harm, can be made by a person with no medical or mental health qualifications or experience because it provides one universal standard of care and the same evidential burden for all situations of emergency admission, irrespective of circumstances and location.

---

[1] The authorized persons are psychiatrists, physicians, licensed clinical psychologists, clinical nurses with psychiatric qualifications, nurse practitioners and clinical nurse specialists with psychiatric qualifications, parole officers, police officers, and sheriffs. It also includes "health officers" of unspecified credentials who are designated to perform functions under 5122.10 by a city, health district, or board of mental health or rehab facility.

This and the lay content of the Note used to effect the detention is evidence that no special medical skills were used in the detention. Plaintiff asserts it would therefore be wrong to characterize his Complaint as including medical claims simply because it took place in the waiting room of a hospital. In *McFarren v. Canton*, 2016-Ohio-484, 59 N.E.3d 652 (5th Dist.) the plaintiff was successful in arguing that her fall, even whilst a voluntarily admitted patient inside a hospital, did not involve or was derived from her medical care, and thus did not require excerpt medical evidence. If liability for non-medical acts by medical providers can arise within a valid patient relationship inside a hospital and within the course of treatment, then it stands to reason that it can also arise where non-medical acts by hospital staff cause injury to a non-patient.

In addition to clearly elucidating that 5122.10 is a threshold issue **before** involuntary transportation and admission to a hospital, the evidence (unlike for R.C. 5589.06 referenced above) capable of supporting a "reason to believe" is presented to the finder of fact in the definitions at 5122.01(B)(1) through (B)(5). Compliance therefore requires evidence:

> (1) …of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
>
> (2) …of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
>
> (3) …that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community;
>
> (4) [that the person] Would benefit from treatment for the person's mental illness and is need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person;

As Plaintiff was not provided with the R.C. 5122.10(B) written statement from the Defendant setting out the grounds for the involuntary admission, he cannot at this time conclusively advise as to which of these above the Defendant purports to have relied upon. However, a finding of fact in that regard (which would render an additional question of fact and prevent negligence *per se*) is not necessary, because Defendant is obligated to include in the written statement the specific reasons and evidence relied upon, saying it shall "…specify the circumstances under which such person was taken into custody and the reasons for the belief that the person...represents a substantial risk of physical harm to self or others…".

An additional level of scrutiny applies to admissions under R.C 5122.01(4). The generality of "would benefit" is clarified by R.C. 5122.01(5)(a) which means it requires a clinical diagnosis that the person is (i) unlikely to survive in the community without supervision, (ii) has a history of non-compliance with mental health treatment, and (iii) is unlikely to participate voluntarily with necessary treatment. What constitutes a "lack of compliance with treatment for mental illness" is prescribed down to the granular level of the number and nature of

occurrences within set time frames.

The Supreme Court instructs that if there is conflicting evidence (for example, questions of visibility and the avoidance of a vehicle collision) that there is question for the jury *Kerns v. Hale*, 2024-Ohio-2061 and negligence *per se* is unavailable. No such dispute of material fact exists here, Plaintiff accepts the Note on its face as to the involuntary nature of the taking and as an accurate statement of his interactions with the Defendant prior to detention The Note does not contain observations of dangerous ideations or detachment from reality by the Plaintiff. The full text of the Note is:

### Care Plan Note by Social Worker Jennifer at 4/12/2024

SW contact by MHPD Sgt. To assist with pt refusing to leave ED lobby.

SW attempted to speak with pt. Pt ignored SW. Pt remained slumped in chair with eyes closed.

Pt was later observed fixated on MHPD Corp. And to be internally stimulated. Pt would laugh loudly. Pt cupped his mouth and laughed loudly. Pt refused to follow commands. Pt was placed on medical bed and transported to ED room 9 for evaluation.

Jennifer Rodgers, MSW, LSW

ED Psych Liaison

Leaving aside how a person who had been discharged from an overnight stay with no shoes, no phone, and no wallet, could be expected to leave without transport, there is no material dispute over the events preceding the detention so at to require the finder of fact to make a decision between competing versions. Plaintiff asserts that medical diagnosis or treatment is absent from the Note, which in *Browning v Burt*, 66 Ohio St.3d 544, 556-557, 613 N.E.2d 993, 1003 (1993) were identified as "…terms of art, having a specific and particular meaning relating to the identification and alleviation of a physical or mental illness, disease, or defect."

Plaintiff submits Defendant's statutory duty to Plaintiff is fixed under R.C. 5122.10 and 5122.10(B) and absolute because the duty and evidence of discharge is prescribed and remains the same irrespective of differing circumstances so that failure to comply is negligence *per se*. Negligence *per se* renders the Rule 10 procedure redundant, as the introduction of medical evidence of negligence is not mandatory if duty and breach have already been established. As stated, failure to comply with R.C. 5122.10 denies Defendant shelter under the good faith protection of R.C. 5122.34. As was said in *Swoboda* v. *Brown*, 129 Ohio St. 512, 196 N.E. 274:

"Where a specific requirement is made by statute and an absolute duty thereby imposed, no inquiry is to be made whether the defendant acted as a reasonably prudent man, or was in the exercise of ordinary care. In such a situation, the obligation and requirement has been fixed and established by law, and the conduct of any person which is violative of such specific statutory requirement is illegal and if it proximately results in injury to one to whom a legal duty is owed, the transgressor is liable for the resulting damage. In such case, the jury is not called upon to determine whether the conduct constituted negligence; it determines only whether the act prohibited was committed or the act required by law was omitted, as the case may be".

### 3.  <u>Medical Claims Require a Physician-Patient Relationship</u>

Plaintiff further asserts that legally privileged medical care can only arise in the context of a valid physician-patient relationship. A discharged person having signed all the relevant papers and waiting quietly and peacefully indoors to be picked-up from the hospital waiting room is clearly not a patient with the meaning of that term and so a patient relationship must be established. Compliance with R.C. 5122.10 is an essential prerequisite to establish the legal framework necessary for an involuntary admission prior to the provision of medical care. Since the only definition of "patient" provided within R.C. 5122.01 is regarding a person voluntarily or involuntarily admitted in connection with criminal prosecutions[2], Plaintiff suggests that either it was a legislative oversight to not include non-criminally related situations, or that if the omission was intentional, that the legislators intended to rely on the common understanding of "patient" as it relates to hospitalization. Either way, if a criminally charged person subject to emergency involuntary hospitalization under Chapter 5122 must be admitted in order to be a "patient", logic suggests that an equivalent admission requirement must apply to a person not subject to criminal prosecution before the hospital can treat and incur fees from them as a patient.

Without a valid admission, questions of the *quality* of medical care (which would otherwise be a medical claim subject to Rule 10) do not arise because there was no person "…with a mental illness subject to a court order…"[3] who could lawfully receive and be liable for medical care. Rather, Plaintiff asserts, violations of bodily autonomy performed in connection with false imprisonment should properly be regarded as intentional torts of the kinds alleged in his Complaint. To hold otherwise would be to condone forced medical treatment against competent adults held against their will and to extend the legislative protection under Rule 10 to individuals who failed to comply with the law in dealing with persons who were at a significant power disadvantage.

In its Motion, Defendant cites *Ratcl₁ife v. University Hospitals Cf Cleveland*, 8th Dist. Cuyahoga No. 61791, 1993 WL 69553 (informed consent to treatment), *Singh v. Cleveland Clinic Found*, 8th Dist. Cuyahoga No. 99066, 2013-Ohio-2465 (malpractice in treatment), *Chromik v. Kaiser Permanente*, 8th Dist. Cuyahoga No. 89088, 2007-Ohio-5856 (wrongful death), and *Rogers v. Genesis Healthcare System, Inc.*, 5th Dist. Muskingum No. CT2015-0030, 2016-Ohio-721, 5, 26 28 (theft while an inpatient) in support of its claim that Plaintiff's causes of actions are derivative of medical care. Plaintiff asserts those foregoing cases should be distinguished on the facts because they all involved causes of actions arising from where the plaintiff was **already a patient of the medical facility**. R.C. 5122.10 establishes the burden and procedural requirements that must be satisfied before a person can involuntarily be made a patient.

---

[2] (C)(1) "Patient" means, subject to division (C)(2) of this section, a person who is admitted either voluntarily or involuntarily to a hospital or other place under section 2945.39, 2945.40, 2945.401, or 2945.402 of the Revised Code subsequent to a finding of not guilty by reason of insanity or incompetence to stand trial or under this chapter, who is

[3] R.C. 5122.01(B)

Unlike those foregoing cases, and unlike the plaintiff in *Evans v. Ohio Dep't of Rehab. & Corr., 2020 Ohio 6839 (Ohio Ct. App. 2020)* ("Evans"), the Plaintiff's causes of actions have a legal existence independent of medical care. *Evans* argued violation of R.C. 2921.44(C)(2) (prohibition against negligent failure to provide medical care to an inmate) was negligence *per se* and not a medical claim. In ruling against him, the court said "In order for the trial court to find that ODRC violated the statute, Evans would have to establish the appropriate plan of care or medical treatment for his various ailments and that the medical staff at RCI negligently failed provide it. This falls squarely within the definition of "medical claim." Essentially *Evans'* claim needed the existence of medical care to prove violation of the statute. In *Evans* and the foregoing cases cited by the Defendant, there was no argument that plaintiff was not actually a patient. Thus the courts determined that the care provided to a validly admitted patient was medical care. In the immediate case, Plaintiff argues he was not a patient and R.C. 5122.10 does not include a requirement that medical care be present in order for liability to exist. Nor is medical care a required element of false imprisonment at common law[4]. In the circumstances evidenced by the Note, Defendant's failure to discharge its duties under R.C. 5122.10 and R.C 5122.10(B) would mean there was no valid physician-patient relationship, of the kind identified in *Hafner v. Reynolds*, 149 Ohio App. 3d 339, 342, 2002-Ohio-4655, 777 N.E.2d 312, ¶ 6 (6th Dist.) where the resulting acts of Defendant could properly be said to be medical care subject to Rule 10 procedure.

### 4.  <u>Alternative Argument – Motion for Extension of Time</u>

Should the Court disagree with the foregoing objections to the Motion,  Plaintiff respectfully requests an extension of time under Ohio Civ.R.10(B) to comply with Rule 10.

Plaintiff served its Complaint on 6 June 2024, and issued a subpoena for evidence on 1 July, 2024. Following the grant of its request for additional time to respond, Defendant provided Plaintiff's medical chart and police dispatch records on 15 August, 2024 for the period April 12 through April 17, 2024. However, Defendant has not provided:

(i)     Plaintiff's ED medical records from 11 April, 2024, detailing the treatment and discharge of the Plaintiff;

(ii)    the hospital waiting room video footage showing the interactions with and physical confinement of the Plaintiff (due to issues said to arise in the blurring of faces);

(iii)   the written statement required by R.C. 5122.10(B);

(iv)   Plaintiff's medical records from the psychiatric ward covering the period April 18-22;

---

*Ohio Dept. of Rehab. & Corr.*, 60 Ohio St.3d 107, 109, 573 N.E.2d 633 (1991)

(collectively, the "Withheld Records")

Plaintiff submits that as the Withheld Records are either disclosable under Defendant's records policy, or are Plaintiff's own medical information. As Defendant has, or should have, already compiled the Withheld Records as part of the ordinary course of its business, that any burden in providing those records is *de minimis* compared to the prejudicial effect on Plaintiff's ability to comply with Rule 10 and discovery proceed on the limited basis provided here. In order for Plaintiff to provide sufficient transparency to a medical expert to confidently provide opinion on a relatively uncommon cause of action, Plaintiff suggests the provision of the Withheld Records is necessary and that the extension of time, if granted, should being from the date the Withheld Records have been received from the Defendant.

Respectfully submitted,

*/s/ Michael Dodsworth*
Michael Dodsworth
Plaintiff pro se

## **PROOF OF SERVICE**

I hereby certify that on August 25, 2024, a copy of the foregoing Objection to Defendants' Motion to Dismiss and Stay Discovery was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to:

John A. Favret_____                    Attorney for Defendants _____
TUCKER ELLIS LLP
john.favret@tuckerellis.com

/s/Michael Dodsworth

Michael Dodsworth

Plaintiff pro se

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**GENERAL PLEADING**
**September 3, 2024 15:46**

By: JOHN A. FAVRET III 0080427

Confirmation Nbr. 3262739

MICHAEL DODSWORTH                                   CV 24 998581

     vs.

METROHEALTH SYSTEM, ET AL                    **Judge:** JEFFREY P. SAFFOLD

**Pages Filed:** 4

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| MICHAEL DODSWORTH, | ) | CASE NO. CV 24 998581 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY P. SAFFOLD |
| | ) | |
| v. | ) | |
| | ) | **REPLY IN SUPPORT OF MOTION** |
| METROHEALTH SYSTEM, et al., | ) | **TO DISMISS PLAINTIFF'S** |
| | ) | **COMPLAINT AND STAY** |
| Defendants. | ) | **DISCOVERY** |
| | ) | |
| | ) | |

Plaintiff's "Objection To Defendants' Motion to Dismiss and Stay Discovery" (hereinafter referred to as "Objection") is misplaced.

***First,*** Plaintiff fails to address the numerous allegations pled in the Complaint which, by themselves, sufficiently comprise a medical claim under Ohio law. (*See* Motion to Dismiss (hereinafter referred to as "MTD"), pgs. 1-2.) Instead, Plaintiff narrowly focuses on certain allegations in his Complaint surrounding his involuntary admission to the hospital while in the waiting room of the ER. (*See* Objection, pg. 3). In doing so, Plaintiff erroneously argues that his Complaint does not consist of a medical claim because R.C. 5122.10 doesn't necessarily require a medical professional to institute an involuntary hospital admission, although in making this argument Plaintiff concedes that in this particular case --- Defendant social worker Jennifer Rodgers was a medical professional that effected Plaintiff's admission (*See* Objection, pg. 3). Putting aside the fact that Rodgers was in fact a medical professional and that the Complaint is replete with various other allegations against Defendant MetroHealth's medical staff that involve criticisms of the medical care they provided to Plaintiff (for example, allegations that medical staff performed unnecessary medical tests and improper drug administration, *see* MTD, pgs. 4-

5), the specific issue of whether Plaintiff should have been involuntarily admitted to the hospital by social worker Rodgers due to her identification of his mental condition and whether or not Rodgers should have administered benzodiazepine at that time in the ER waiting room inevitably requires a medical expert to opine on the standard of care for a social worker during an involuntary admission, and whether or not the social worker breached that standard of care. (*See* Complaint, ¶¶17-20.)

Moreover, even if Plaintiff was correct (which he is not) in that a violation of R.C. 5122.10 is *negligence per se* so that medical expert testimony on standard of care is not required in this case (*see* Objection, pg. 5.), Plaintiff would still be required to submit medical expert testimony as to any such violation proximately causing injury under Civil Rule 10(D)(2). Further, Plaintiff's attempt to use the medical records in his Objection, including the medical record cited by Plaintiff that purportedly describes a record from social worker Rodgers not containing a medical diagnosis (*see* Objection, pg. 5.), is wholly improper and should not be considered by the Court as Defendants' MTD is a Rule 12(B)(6) motion based entirely on Plaintiff's Complaint. Regardless, the allegations in the Complaint involve social worker Rodgers's decision to administer benzodiazepine to Plaintiff and involuntary admit him (*see* Complaint¶¶17-20), and this certainly relates to the identification of a mental illness and it arises out of medical treatment, either of which satisfy a medical claim under Ohio law. (*See* MTD, pgs. 6-7). For the reasons stated above, Defendants' MTD and Stay of Discovery should be granted.

***Second***, Plaintiff mistakenly contends that the Complaint does not contain a medical claim because he was not in a physician-patient relationship at the precise time prior to his involuntary admission when in the ER waiting room following discharge from the ER, although

it is telling that his Objection is entirely silent on whether he was a patient during the ER admission or the hospital admission following where many of the allegations and criticisms against Defendants arise from. (*See* Objection, pgs. 6-7.) Nevertheless, Plaintiff points to a distinction without a difference. A medical claim under Ohio law involves "any claim" that is asserted in any "civil action" that arises out of the medical diagnosis, care, or treatment of any person. There is no requirement that Plaintiff has to be in a physician-patient relationship for the Complaint to be a medical claim. As highlighted above and in the MTD, Plaintiff's Complaint satisfies the definition of a medical claim under R.C. 2305.113(E). Therefore, the Court should grant Defendants' MTD and dismiss Plaintiff's Complaint without prejudice.

*Finally*, to clarify and as previously noted in the MTD, undersigned counsel already provided to Plaintiff his MetroHealth medical chart, including specifically the record from the ER on April 11, 2024, the hospital admission starting April 12, 2024, and the inpatient behavioral health admission starting April 17, 2024. Should there be additional records from April 18-22, 2024, as Plaintiff requests in his Objection, undersigned counsel will obtain them and produce them to Plaintiff upon receipt promptly. Further, and while Defendants believe it is not necessary in order to obtain a medical review and an affidavit of merit, undersigned counsel will coordinate with Plaintiff to offer a viewing of the available requested video at the MetroHealth police department (as was already offered to Plaintiff earlier this year) or provide a redacted version (for privacy reasons) if it is practicable to do so. Otherwise, Defendants respectfully request that the Court stay all other discovery until resolution of Defendants' MTD,

either by dismissal of Plaintiff's Complaint entirely or until Plaintiff provides the necessary affidavit of merit by a date set by the Court.

Respectfully submitted,

/s/John A. Favret
John A. Favret (0080427)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:     (216) 592-5000
Facsimile:     (216) 592-5009
E-mail:john.favret@tuckerellis.com
*Attorney for Defendants MetroHealth System, Jennifer Rodgers, and Daniella Caudle*

## PROOF OF SERVICE

I hereby certify that on September 3, 2024, a copy of the foregoing **Reply in Support of Defendants' Motion to Dismiss Plaintiff's Complaint and Stay Discovery** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties, if any, indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

Michael Dodsworth
dodsworth.michael@gmail.com

*Plaintiff*
*Pro se*

/s/ John A. Favret
John A. Favret
*Attorney for Defendants MetroHealth System, Jennifer Rodgers, and Daniella Caudle*



185907086

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

MICHAEL DODSWORTH
    Plaintiff

Case No: CV-24-998581

Judge: JEFFREY P SAFFOLD

METROHEALTH SYSTEM, ET AL
    Defendant

## <u>JOURNAL ENTRY</u>

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY DISCOVERY, FILED 08/14/2024, IS GRANTED IN PART.

PURSUANT TO CIV. R. 10(D)(2) PLAINTIFF SHALL FILE HIS AFFIDAVIT OF MERIT BY NO LATER THAN 12/03/2024. DEFENDANTS' MOTION TO DISMISS IS HEREBY HELD IN ABEYANCE.  FAILURE OF THE PLAINTIFF TO COMPLY WILL RESULT IN DISMISSAL OF THE CASE WITHOUT PREJUDICE FOR WANT OF PROSECUTION.

DISCOVERY IN THIS MATTER IS STAYED WITH THE EXCEPTION THAT DEFENDANTS SHALL PROMPTLY PROVIDE PLAINTIFF WITH ALL RECORDS IN ITS POSSESSION DIRECTLY RELATED TO THE SUBJECT INCIDENT, INCLUDING A VIEWING OF ANY AVAILABLE RELEVANT AND SUFFICIENTLY REDACTED VIDEO.

FAILURE TO COMPLY WITH ANY PORTION OF THIS COURT'S ORDERS MAY RESULT IN SANCTIONS.

IT IS SO ORDERED.

_____
Judge Signature            09/05/2024

09/04/2024

Motion No.  <u>5214402</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**MOTION FOR EXTENSION OF TIME**
**December 3, 2024 23:11**

By: JOSEPH SOBECKI 0101714

Confirmation Nbr. 3343527

MICHAEL DODSWORTH                              CV 24 998581

       vs.

METROHEALTH SYSTEM, ET AL              **Judge:**  JEFFREY P. SAFFOLD

Pages Filed:  4

IN THE COURT OF COMMON PLEAS OF CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **Michael Dodsworth** | ) |
| | ) Case Number: CV-24-998581 |
| Plaintiff, | ) |
| vs. | ) Judge: Jeffrey P. Saffold |
| | ) |
| **MetroHealth System, *et al.*** | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

---

## <u>MOTION FOR EXTENSION OF TIME TO FILE AFFIDAVIT OF MERIT</u>

Plaintiff Michael Dodsworth ("Dodsworth"), through counsel, files this Motion for Extension of Time to file his affidavit of merit pursuant to Ohio Civ.R. 6(B). Dodsworth respectfully requests that this Court grant him a fourteen (14) day extension of time and permit him to file his affidavit of merit by December 17, 2024. In support of the instant Motion, Dodsworth states as follows:

## <u>BACKGROUND</u>

Dodsworth filed his pro se complaint on June 7, 2024. Pl. Compl. Defendants Daniella Caudle and Jennifer Rogers (collectively "Metrohealth") filed a motion to dismiss on August 14, 2024. Def. Mot. to Dismiss. On September 5, 2024, this Court ordered Dodsworth to file an affidavit of merit "no later than" December 3, 2024. Journal Entry 20240905 at 1. Dodsworth retained counsel who appeared on November 15, 2024. Pl. Notice of Appearance.

## ARGUMENT

**I.      THIS COURT HAS DISCRETION TO GRANT THE INSTANT MOTION.**

When by…order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion…order the period enlarged if request therefor is made before the expiration of the period originally prescribed…" Civ.R. 6(B). "Trial courts have inherent power to manage their own dockets and the progress of the proceedings before them. Whether to grant or deny a motion to extend a court-ordered deadline is a decision within the trial court's sound discretion." *Sultaana v. Barkia Ents.*, 2020-Ohio-4468, ¶ 6 (8th Dist.) (internal citations omitted). Since Dodsworth raises the instant Motion before the expiration of time prescribed to file his affidavit of merit, there is no doubt that this Court may exercise its discretion and grant the instant Motion.

**II.     THIS COURT SHOULD GRANT THE INSTANT MOTION SO THAT DODSWORTH'S EXPERT CAN REVIEW PROTECTED DOCUMENTS.**

Since Dodsworth retained counsel, both parties have established a positive working relationship. A foundational element of this was Dodsworth's willingness to enter into a protective order, in addition to the Defendants' collective willingness to offer a protective order. The protective order will enable all parties to exchange documents under a mutual agreement that protected information and documents will not be disclosed in an undesired manner. Dodsworth expects that the above referenced joint protective order will be filed by the Defendants at their earliest convenience.

Unfortunately, this protective order was not able to be put into place and filed prior to December 3, 2024—the deadline that this Court set for Dodsworth to file his affidavit of merit. As a result, Dodsworth respectfully requests that this Court grant the instant Motion so that Dodsworth's expert may review protected documents subject to initial disclosure prior to signing

an affidavit of merit. An additional fourteen (14) days is a reasonable amount of time for both parties to work together to exchange the final initial disclosure documents subject to the protective order. It is also a reasonable amount of time for Dodsworth's expert to review the protected documents subject to initial disclosure prior to drafting his affidavit of merit. A Proposed Order is attached, should this Court wish to adopt it.

## **CONCLUSION**

Dodsworth respectfully requests that this Court grant the instant Motion and permit him to file his affidavit of merit by December 17, 2024, so that his expert may review documents subject to a protective order prior to signing an affidavit of merit.

Dated: December 3, 2024

Respectfully submitted,

**Joseph Sobecki**
Ohio Bar Number: 101714
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Direct: (419) 283-9282
Office: (419) 242-9908
Facsimile: (419) 242-9937
Email: joseph@josephsobecki.com
*Attorney for Plaintiff, Michael Dodsworth*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent via electronic mail on December 3, 2024, to all counsel or parties of record on the service list below.

**Joseph Sobecki**

## SERVICE LIST

**MetroHealth System, Jennifer Rodgers, and Daniella Caudle**
c/o John A Favret III
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.favret@tuckerellis.com



189388950

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

MICHAEL DODSWORTH
    Plaintiff

Case No: CV-24-998581

Judge: JEFFREY P SAFFOLD

METROHEALTH SYSTEM, ET AL
    Defendant

## <u>JOURNAL ENTRY</u>

PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE AFFIDAVIT OF MERIT, FILED 12/03/2024, IS GRANTED.

PLAINTIFF SHALL FILE HIS AFFIDAVIT OF MERIT BY NO LATER THAN 12/17/2024.  DEFENDANTS' MOTION TO DISMISS REMAINS HELD IN ABEYANCE.  FAILURE OF THE PLAINTIFF TO COMPLY WILL RESULT IN DISMISSAL OF THE CASE WITHOUT PREJUDICE FOR WANT OF PROSECUTION.

IT IS SO ORDERED.

_____
Judge Signature               12/04/2024

12/04/2024



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**ANSWER OF...**
**May 30, 2025 13:43**

By: JOHN A. FAVRET III 0080427

Confirmation Nbr. 3510970

MICHAEL DODSWORTH                                CV 24 998581

     vs.

METROHEALTH SYSTEM, ET AL                **Judge:** JEFFREY P. SAFFOLD

**Pages Filed:**  12

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

MICHAEL DODSWORTH

    Plaintiff,

v.

METROHEALTH SYSTEM, et al,

    Defendants.

)
)
)
)
)
)
)
)
)

CASE NO. CV 24 998581

JUDGE JEFFREY P. SAFFOLD

**DEFENDANTS METROHEALTH
SYSTEM, DANIELLA CAUDLE, MD,
AND JENNIFER RODGERS, MSW,
LSW'S ANSWER TO PLAINTIFF'S
COMPLAINT**

Defendant MetroHealth System, Daniella Caudle, MD, and Jennifer Rodgers, MSW, LSW (collectively "Defendants"), by and through their counsel, and for their Answer to Plaintiff's Complaint, state as follows:

**THE PARTIES**

1.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of Plaintiff's Complaint and, therefore, deny them.

2.    In response to Paragraph 2 of Plaintiff's Complaint, Defendants admit only that The MetroHealth System is listed as an active registered trade name under the laws of the State of Ohio, that MetroHealth System has a main campus in Cleveland, and that MetroHealth System qualifies as a political subdivision for purposes of R.C. 2744. Any remaining allegations in Paragraph 2 of Plaintiff's Complaint are denied.

3.    In response to Paragraph 3 of Plaintiff's Complaint, Defendants admit only that MetroHealth System has a Department of Public Safety and Police Department. Defendant MetroHealth System affirmatively denies using police officers for intimidation and control. Any remaining allegations in Paragraph 3 of Plaintiff's Complaint are denied.

4.      Paragraph 4 of Plaintiff's Complaint contains a legal conclusion, to which no response is required. To the extent a response is deemed required, Defendant MetroHealth System denies that its medical or police personnel were negligent or reckless or acted inappropriately in any manner. Defendants deny any remaining allegations.

## JURISDICTION AND VENUE

5.      Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of Plaintiff's Complaint and, therefore, deny them.

6.      Paragraph 6 of Plaintiff's Complaint contains a legal conclusion, to which no response is required. To the extent a response is deemed required, Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of Plaintiff's Complaint and, therefore, deny them.

7.      Paragraph 7 of Plaintiff's Complaint contains a legal conclusion, to which no response is required. To the extent a response is deemed required, Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of Plaintiff's Complaint and, therefore, deny them.

## FACTS

8-21.      In response to Paragraphs 8 through 21 of Plaintiff's Complaint, Defendants admit only that Plaintiff was taken to MetroHealth System Emergency Department at Cleveland Heights on April 11, 2024, and was discharged on April 12, 2024. Defendants further refer to Plaintiff's medical chart which outlines the medical facts of Plaintiff's Emergency Department admission in April 2024, and Defendants affirmatively deny any of the allegations asserted that contradict the medical chart. Further, Defendant Rodgers affirmatively denies any allegations asserted against her. Further answering, Defendants otherwise deny the allegations because they

are not true and because Defendants lack knowledge sufficient to form a belief as to the truth of the allegations. Defendants deny all allegations not expressly admitted herein.

22-25.      Defendants deny the allegations stated in Paragraph 22 through 25 of Plaintiff's Complaint.

26.      Defendants deny that Plaintiff was falsely imprisoned. Defendants otherwise deny any remaining allegations in paragraph 26 of Plaintiff's Complaint for lack of knowledge or information sufficient to form a belief as to the truth of the allegations.

**FIRST CAUSE OF ACTION**
**FALSE IMPRISONMENT, CIVIL ASSAULT AND BATTERY - METROHEALTH, RODGERS (her official capacity), JOHN DOE 1-3 (their official capacity)**

27.      Defendants repeat and restate their responses to Paragraphs 1 through 26 of Plaintiff's Complaint, as if set forth fully herein.

28-31.      Defendants deny the allegations set forth in Paragraphs 28 through 31 of Plaintiff's Complaint.

**SECOND CAUSE OF ACTION**
**CIVIL BATTERY - METROHEALTH, RODGERS (official capacity)**

32.      Defendants repeat and restate their responses to Paragraphs 1 through 31 of Plaintiff's Complaint, as if set forth fully herein.

33-34.      Defendants deny the allegations set forth in Paragraphs 33 through 34 of Plaintiff's Complaint.

**THIRD CAUSE OF ACTION**
**CIVIL ASSAULT AND BATTERY – METROHEALTH**

35.      Defendants repeat and restate their responses to Paragraphs 1 through 34 of Plaintiff's Complaint, as if set forth fully herein.

36-39.      Defendants deny the allegations set forth in Paragraphs 36 through 39 of Plaintiff's

Complaint.

## FOURTH CAUSE OF ACTION
## CIVIL SEXUAL ASSAULT - METROHEALTH, JOHN DOE 4 (his official capacity)

40.     Defendants repeat and restate their responses to Paragraphs 1 through 39 of

Plaintiff's Complaint, as if set forth fully herein.

41-42.     Defendants deny the allegations set forth in Paragraph 41 through 42 of Plaintiff's

Complaint.

## FIFTH CAUSE OF ACTION
## CIVIL ASSAULT AND BATTERY - METROHEALTH, JOHN DOE 5 (her official capacity), JOHN DOE 7 (his official capacity)

43.     Defendants repeat and restate their responses to Paragraphs 1 through 42 of

Plaintiff's Complaint, as if set forth fully herein.

44-46.     In response to paragraphs 44 through 46 of Plaintiff's Complaint, Defendants deny

the allegations because they are not true. Defendants otherwise deny the allegations for lack of

knowledge or information sufficient to form a belief as to the truth of the allegations.

47-50.     In response to paragraphs 47 through 50 of Plaintiff's Complaint, Defendants deny

the allegations or deny the allegations as stated.

## SIXTH CAUSE OF ACTION
## CIVIL SEXUAL ASSAULT AND BATTERY - METROHEALTH, JOHN DOE 6 (his/her official capacity)

51.     Defendants repeat and restate their responses to Paragraphs 1 through 50 of

Plaintiff's Complaint, as if set forth fully herein.

52.     Defendants admit only that a Code Stroke was called on April 15, 2024, as outlined

in Plaintiff's medical chart. Defendants otherwise deny the remaining allegations in Paragraph 52

of Plaintiff's Complaint.

53.     Defendants deny the allegations as stated in Paragraph 53 of Plaintiff's Complaint.

54-55.     Defendants deny the allegations in Paragraph 54 through 55 of Plaintiff's Complaint.

## SEVENTH CAUSE OF ACTION
## CIVIL BATTERY – METROHEALTH

56.     Defendants repeat and restate their responses to Paragraphs 1 through 55 of Plaintiff's Complaint, as if set forth fully herein.

57-60.     Defendants refer to Plaintiff's medical chart which outlines the medical facts of Plaintiff's behavioral health admission in April 2024, and Defendants affirmatively deny any allegations that contradict the medical chart. Defendants otherwise lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 57 through 60 of Plaintiff's Complaint and, therefore, deny them. Defendants deny all allegations not expressly admitted herein.

61.     Defendants deny the allegations set forth in Paragraph 61 of Plaintiff's Complaint.

## EIGHTH CAUSE OF ACTION
## PUBLICATION OF PRIVATE FACTS, INTRUSION ON SECLUSION, FALSE LIGHT, BREACH OF IMPLIED CONTRACT, SLANDER - METROHEALTH, CAUDLE (in her official and individual capacities)

62.     Defendants repeat and restate their responses to Paragraphs 1 through 61 of Plaintiff's Complaint, as if set forth fully herein.

63-68.     In response to Paragraphs 63 through 68 of Plaintiff's Complaint, Defendants deny the allegations and deny the allegations as stated.

## NINTH CAUSE OF ACTION
## NEGLIGENCE/RECKLESS SUPERVISION, HIRING, AND/OR TRAINING - METROHEALTH

69.     Defendants repeat and restate their responses to Paragraphs 1 through 68 of

Plaintiff's Complaint, as if set forth fully herein.

70-72.     Defendants deny the allegations set forth in Paragraph 70 through 72 of Plaintiff's

Complaint.

**TENTH CAUSE OF ACTION**
**PUNITIVE DAMAGES — METROHEALTH, CAUDLE**

73.     Defendants repeat and restate their responses to Paragraphs 1 through 72 of

Plaintiff's Complaint, as if set forth fully herein.

74-76.     Defendants deny the allegations set forth in Paragraph 74 through 76 of Plaintiff's

Complaint. Defendants further deny the prayer for relief contained in the "WHEREFORE"

paragraph set forth below Paragraph 76 of Plaintiff's Complaint.

**AFFIRMATIVE/SEPARATE DEFENSES**

1.     The MetroHealth System qualifies as a political subdivision under R.C.

§ 2744.01(F), thus entitling Defendants to all of the rights, privileges, and immunities conferred

under R.C. Chapter 2744.

2.     Defendants raise, assert, and preserve, the defenses and immunities set forth in R.C.

§ 2744.03 as may be applicable in this case, including the immunity from liability conferred by

R.C. § 2744.03(A)(5).

3.     R.C. § 2744.05(A) bars the recovery of punitive or exemplary damages against

Defendants.

4.     Defendants raise, assert, and preserve the mandatory setoff provisions of R.C. §

2744.05(B) which require all past and future collateral benefits be deducted from any award that

Plaintiff may recover against Defendants in this case.

5.     Defendants raise, assert, and preserve the mandatory caps on compensatory

damages against a political subdivision as set forth in R.C. § 2744.05(C)(1).

6.     Defendants raise, assert, and preserve all other substantive and procedural rights, entitlements, obligations, defenses, and immunities available to political subdivisions in civil actions for tort liability as set forth in R.C. Chapter 2744 and any other Ohio statutes, including any applicable amendments thereto.

7.     Defendants are entitled to a good faith immunity defense under R.C. 5122.34, *et seq.*, and related common law, and therefore Plaintiff's Complaint should be dismissed.

8.     One or more of the claims in Plaintiff's Complaint fails to state a claim upon which relief can be granted against Defendants.

9.     One or more of the claims set forth in the Complaint are barred by the applicable statutes of limitation and/or the equitable doctrines of waiver, estoppel, or laches.

10.    Plaintiff's claims against Defendants are barred by the doctrines of superseding and/or intervening causes.

11.    Defendants hereby raise, assert and preserve their defenses of insufficiency of process and/or insufficiency of service of process.

12.    Plaintiff was fully advised of the material risks, benefits and alternatives available for the treatment of Plaintiff's medical conditions and thereafter consented to treatment rendered and assumed the risk or risks of such treatment, or of not pursuing treatment. To the extent that Plaintiff claims a lack of informed consent, such claims are also barred by Ohio Revised Code § 2317.54.

13.    All or part of the injuries or damages alleged in the Complaint were caused or contributed to by the actions or omissions of another or others, for whose conduct Defendants were and are not responsible (R.C. § 2307.22, et seq.).

14.    The injuries or damages of which Plaintiff complains are attributable to one or more

persons from whom Plaintiff did not seek recovery in this action (R.C. § 2307.23(C)).

15. Plaintiff has failed to join one or more necessary and indispensable parties.

16. If Plaintiff sustained any of the injuries or damages alleged in the Complaint, such injuries or damages have been caused in whole or in part, or have been contributed to, by Plaintiff's own comparative negligence, culpable conduct, and express or implied assumption of the risk. Such conduct serves as a bar to one or more of Plaintiff's claims or entitles Defendants to a reduction in damages (R.C. § 2307.22, R.C. § 2315.32, et seq.).

17. Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate damages.

18. Further answering, and without prejudice to their denials and other statements in this case, Defendants state that the damages of which Plaintiff complains were or may have been the proximate result of a totally unforeseeable disease, condition, or circumstance.

19. Without prejudice to their denials and other statements in this case, Defendants state that any injuries allegedly sustained in the Complaint were caused by Plaintiff's own underlying disease, the operation of nature and/or by an idiosyncratic reaction and were not due or caused by any alleged fault, lack of care, negligence or breach of duty by Defendants.

20. There is no causal relationship between Defendants' conduct and the injuries and damages alleged by Plaintiff in the Complaint.

21. Plaintiff voluntarily and expressly and/or impliedly consented to the treatment at issue, including any and all risks and complications thereof, and any injuries and/or damages arose out of those same risks.

22. One or more of Plaintiff's claims are barred by the tort reform provisions of Ohio law set forth in Ohio Senate Bill 120 (joint and several liability tort reform), Senate Bill 281

(medical malpractice tort reform), Senate Bill 179 (peer review confidentiality reform), Senate Bill 80 (general personal injury litigation tort reform), House Bill 215, including but not limited to the limitations and prohibitions on certain types of claims, and the limitations (caps) on compensatory and punitive damages set forth therein, including Ohio Revised Code §2323.43, §§ 2307.71 through 2307.80, §2315.21, *et al*.

23.     Defendants are entitled to a set-off from any verdict or judgment entered against it, of any amount paid to Plaintiff by any other person or entity, pursuant to R.C. § 2307.28.

24.     Any allegations in the Complaint that are not specifically admitted or denied elsewhere in this Answer are hereby denied.

25.     One or more of Plaintiff's claims asserted in the Complaint lack a reasonable, good faith basis upon which to bring such a medical claim against Defendants thereby entitling Defendants to an award of attorneys' fees and costs against Plaintiff as provided by R.C. §2323.42.

26.     To the extent that Plaintiff's claims are based on a theory providing for liability without proof of causation, the claims violate Defendants' rights under the United States Constitution and analogous provisions of the Ohio Constitution.

27.     To the extent that Plaintiff seeks punitive damages, without qualification or limitation, this claim violates Defendants' due process rights under the United States Constitution and similar provisions of the Constitution, law and public policy of the State of Ohio.

28.     Plaintiff's claim for punitive damages cannot be sustained to the extent it seeks to punish Defendants for alleged harm to non-parties, other unrelated parties, and/or persons who are not before the Court. Imposition of punitive damages under such circumstances would violate Defendants' procedural and substantive due process rights and equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution and Defendants' due process

and equal protection rights under cognate provisions of the Ohio Constitution, and would be improper under the common law and public policies of the United States and the State of Ohio.

29. Plaintiff's claim for punitive damages should be bifurcated from the liability phase of trial in accordance with R.C. 2315.21(B).

30. Plaintiff's claim for punitive damages is subject to the limitations on punitive damage awards imposed by Ohio law, including but not limited to R.C. 2315.21.

31. Plaintiff's affidavit of merit is insufficient, and therefore Plaintiff's claims should be dismissed.

32. Defendants hereby give notice and intend to rely upon such other defenses as may become available during discovery proceedings in this cause and hereby reserve their right to amend their Answer to assert any such defenses.

WHEREFORE, having fully answered, Defendants MetroHealth System, Daniella Caudle, MD, and Jennifer Rodgers, MSW, LSW request that Plaintiff's Complaint be dismissed at Plaintiff's cost and that the Court grant such further relief as it deems just and proper.

Respectfully submitted,

*/s/ John A. Favret*
John A. Favret (0080427)
Tayler L. Gill (0102513)
Tucker Ellis, LLP
950 Main Avenue - Suite 1100
Cleveland, OH 44113-7213
Tel:    216.592.5000
Fax:    216.592.5009
E-mail: john.favret@tuckerellis.com
            tayler.gill@tuckerellis.com

*Attorneys for Defendants MetroHealth System, Daniella Caudle, MD, and Jennifer Rodgers, MSW, LSW*

## JURY DEMAND

Defendants MetroHealth System, Daniella Caudle, MD, and Jennifer Rodgers, MSW, LSW hereby demand a trial by jury, made up of the maximum allowable number of jurors, and for all facts and issues in this action, pursuant to Rule 38(B) of the Ohio Rules of Civil Procedure.

Respectfully submitted,

*/s/ John A. Favret*
John A. Favret (0080427)
Tayler L. Gill (0102513)
Tucker Ellis LLP
950 Main Avenue - Suite 1100
Cleveland, OH 44113-7213
Tel:    216.592.5000
Fax:    216.592.5009
E-mail: john.favret@tuckerellis.com
         tayler.gill@tuckerellis.com

*Attorneys for Defendants MetroHealth System, Daniella Caudle, MD, and Jennifer Rodgers, MSW, LSW*

## **CERTIFICATE OF SERVICE**

This certifies that a copy of the foregoing Answer to Plaintiff's Complaint by Defendants MetroHealth System, Daniella Caudle, MD, and Jennifer Rodgers, MSW, LSW was filed electronically on May 30, 2025. Service of this filing will be made pursuant to Civ.R. 5(B)(2)(f) and Civ.R. 5(B)(3) by operation of the Court's electronic filing system upon the following:

Joseph Sobecki, Esq.                                   *Attorney for Plaintiff*
405 Madison Avenue, Suite 910
Toledo, OH 4406
(419) 283-9282
Fax: (419) 242-9937
joseph@josephsobecki.com

                                        */s/ John A. Favret*
                                        John A. Favret

                                        *One of the Attorneys for Defendants
                                        MetroHealth System, Daniella Caudle, MD,
                                        and Jennifer Rodgers, MSW, LSW*

IN THE COURT OF COMMON PLEAS OF CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **Michael Dodsworth**                ) | Case Number: CV-24-998581 |
|                    Plaintiff,     ) | |
| vs.                        ) | Judge: Jeffrey P. Saffold |
| **MetroHealth System**, *et al*.     ) | |
|                   Defendants.     ) | |

---

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT INSTANTER

Plaintiff Michael Dodsworth ("Dodsworth") files this Motion for Leave to File Amended Complaint Instanter pursuant to Civ.R. 15(A) and LR 9(C)(2). In support of the instant Motion, Dodsworth states as follows:

### BACKGROUND

On June 7, 2024, Dodsworth filed a pro se complaint against MetroHealth System ("MetoHealth"), Jennifer Rogers, John Doe 1-7, and Daniella Caudle, each named individual defendant being an employee of MetroHealth. Pl. Compl. On November 15, 2025, the undersigned appeared on behalf of Dodsworth. Pl. Notice of Appearance. On January 12, 2025, this Court entered a case management order setting trial on December 8, 2025. Case Management Order.

1

## ARGUMENT

**THIS COURT HAS DISCRETION TO GRANT THE INSTANT MOTION.**

A party may amend its pleading once as a matter of right within twenty-eight days of a responsive pleading and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires." Civ.R. 15(A). "The language of Civ. R. 15(A) favors a liberal policy when the trial judge is confronted with a motion to amend a pleading beyond the time limit when such amendments are automatically allowed." *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 121-122 (1991).

There are two main reasons why a trial court may deny a motion for leave to amend under Civ.R. 15(A). First, "[a] trial court may properly deny a motion for leave to amend a complaint if the amendment would be futile*." Weiler v. Osborn Eng. Co.*, 2023-Ohio-619, ¶ 20 (8th Dist.). Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)...." *Panther Partners Inc. v. Ikanos Communs., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

    **A.**    **The proposed amended complaint is not futile.**

Here, the amended complaint is not futile. "Ohio's Political Subdivision Tort Liability Act (R.C. Chapter 2744) absolves political subdivisions employees, including police officers, of tort liability, subject to certain exceptions. Pursuant to R.C. 2744.03(A)(6)(b), an employee of a political subdivision is immune from liability unless the employee's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." *Carter v. Officer Hymes*, 2020-Ohio-3967, ¶ 24 (8th Dist.). "A political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C.

2744.02(B) applies." *Friga v. City of E. Cleveland*, 2007-Ohio-1716, ¶ 27 (8th Dist.) (quoting *Reno v. City of Centerville*, 2004 Ohio 781, ¶ 5 (2nd Dist.). "It is well settled that a suit against an employee of a political subdivision in the employee's official capacity is an action against the entity itself." *Crenshaw v. City of Cleveland Police Dept.*, 2022-Ohio-3915, ¶ 15 (8th Dist.) Plaintiff's pro se complaint alleges tort claims against the police officers in their official capacity. Pl. Compl. at 4-5.  Although Plaintiff does not concede this issue and reserves the right to argue it in the future, it appears that "MetroHealth is a political subdivision." *Jones v. MetroHealth Med. Ctr.*, 2017-Ohio-7329, 89 N.E.3d 633, ¶ 22 (8th Dist.); *see also Johnson v. Ohio Supreme Court,* 156 Fed.Appx. 779, 779 (6th Cir.2005) (stating the same). Given that Plaintiff must prove an exception to R.C. 2744.02(B) to overcome MetroHealth's likely immunity as it relates to the MetroHealth police officers, Plaintiff elects to proceed under federal law as it relates to claims against the MetroHealth police officers. These claims under federal law protect the Plaintiff encase the Plaintiff must prove an exception to R.C. 2744.02(B) in order to prevail against any defendant on Plaintiff's tort claims.

In order to state a viable claim under federal law, the officers must be named in their personal, rather than official capacity.[1] It is well settled that "[t]he doctrine of respondeat superior

---

[1] In exchange for MetroHealth promptly providing the names of the police officers, Plaintiff's counsel agreed to drop Defendant Dr. Daniella Caudle as a named defendant from an earlier version of the amended complaint that is not before this Court. Counsel made this decision unilaterally due to the inability to confer with Mr. Dodsworth over an extended period of time. The undersigned voluntarily adheres to this agreement in the amended complaint before this Court. However, critically, Plaintiff *must* seek further leave to add every individual that took part in Dodsworth's confinement (likely in excess of fifty individuals) if MetroHealth asserts that it has a complete immunity defense to tort claims that would not otherwise be available against individually named non-police officer MetroHealth employees. Specifically, it *may* be that Dodsworth must demonstrate an exception to R.C. 2744.02(B) in order to prevail against MetroHealth (even pertaining to vicarious liability), but must only demonstrate an easier to prove exception under R.C. 2744.03(A)(6) or (7) to prevail against any individually named defendant if vicarious liability does not apply to the state tort claims in the same way that it does not apply to

does not apply in § 1983 lawsuits to impute liability upon supervisory personnel; rather, in order to find a supervisor liable, a plaintiff must allege that he condoned, encouraged, or knowingly acquiesced in the alleged misconduct." *Lozano v. Corr. Corp. of Am.*, 23 F. App'x 348, 350 (6th Cir. 2001). Plaintiff is not presently in possession of any evidence to suggest a viable claim for municipal liability as it relates to the police officers' actions under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (holding municipal liability under § 1983 requires evidence of a widespread custom or policy that was the driving force behind the violation.). Section 1983 claims against public employees in their official capacity are the equivalent to claims against the governmental entity for whom they work…." *Hiles v. Franklin Cty. Bd. of Commrs.,* 2006-Ohio-16, ¶ 20 (10th Dist.). The MetroHealth police officers must be named in their personal capacity in order to assert a viable claim under § 1983, therefore the amended complaint naming the officers in their official capacity is not futile.

**B.      The Defendants will not be unduly prejudiced by the proposed amended complaint.**

A second main reason why a trial court would deny a motion for leave to amend would be if the proposed amendment(s) unduly prejudices the defendant(s). *See Franciscan Communities, Inc. v. Rice*, 2021-Ohio-1729, ¶ 31 (8th Dist.). The Defendants in this matter will not be prejudiced

---

§ 1983 claims. If MetroHealth seeks to raise this argument at any point, including as part of any appeal, post-trial motion, or dispositive trial motion, Plaintiff requests that MetroHealth notify the Plaintiff as soon as possible so that Plaintiff may plan to seek further leave to add each necessary person individually as a defendant. As long as MetroHealth does not intend to make such an argument at any point, Plaintiff does not seek to add each and every person individually as a defendant. Further, Plaintiff is not presently in possession of the names of each and every individual who participated in the claims described in the proposed amended complaint. Additional discovery is needed to uncover this information. However, should this case proceed to dispositive motion briefing or trial, in order to avoid legal error, it may be absolutely necessary as a matter of law for Plaintiff to seek leave to add each and every individual responsible for the acts described in Dodsworth's proposed amended complaint as an individual defendant—whether Plaintiff or the undersigned counsel wishes to do so or not.

for multiple reasons. First, since Plaintiff retained counsel in this matter the parties have been discussing an amended complaint. The present pro se complaint before this Court names ten defendants, including seven John Doe defendants. The pro se complaint raises ten causes of actions. However, many of these causes of actions are actually more than one cause of action shoehorned into a single count. For example, the first cause of action is for false imprisonment, civil assault, and battery. Pl. Compl. at X. After consulting with counsel, Dodsworth agrees that count one of his pro se complaint should have been split into three counts—(1) false imprisonment, (2) assault, and (3) battery. Other counts include the same issue, for example, count eight (8) alleges publication of private facts, intrusion upon seclusion, false light, breach of implied contract, and slander in a single count. *Id.* at X. The aforementioned organization of the complaint makes it extremely difficult to both parties to litigate this matter and direct filings at specific counts or defendants. The amended complaint solves this issue because it will enable any party to direct dispositive motions at specific defendants or counts.

MetroHealth may argue that it is unduly prejudiced by the new § 1983 counts. Plaintiff asserts that MetroHealth is not unduly prejudiced because it has been in possession of a material similar proposed amended complaint since on or about June 27, 2025.[2] The only material difference between the proposed amended complaint provided to MetroHealth on June 27, 2025, and the amended complaint before this Court is proposed counts nine and ten, which are additional § 1983 counts against various MetroHealth police officers related to incidents pertaining to Plaintiff's confinement on different days. As previously stated, Plaintiff must plead § 1983 claims

---

[2] MetroHealth has consistently acted in good faith at all times pertinent and, upon information and belief, was willing to provide Plaintiff written permission to file an amended complaint. However, Plaintiff seeks to add additional § 1983 counts (counts IX and X), that were not known to MetroHealth at the time it considered Plaintiff's request for written permission to file an amended complaint.

5

against each MetroHealth police officer in his individual capacity or risk waiving any claims against the MetroHealth police officers.

## **CONCLUSION**

Plaintiff respectfully requests that this Court liberally consider and then grant the instant Motion permitting Plaintiff to file the proposed amended complaint instanter. The proposed amended complaint will move this case closer to a resolution and will provide MetroHealth the opportunity to swiftly remove this case to the United States District Court for the Northern District of Ohio—should it elect to do so. Plaintiff's proposed amended complaint is attached pursuant to LR 9(C)(3). A proposed order is also attached should the Court wish to adopt it.

Dated: August 8, 2025

Respectfully submitted,

*Joseph Sobecki*
_____
**Joseph Sobecki**
Ohio Bar Number: 101714
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Direct: (419) 283-9282
Office: (419) 242-9908
Facsimile: (419) 242-9937
Email: joseph@josephsobecki.com
*Attorney for Plaintiff, Michael Dodsworth*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent via electronic mail on August 8, 2025, to all counsel or parties of record on the service list below.

*Joseph Sobecki*
_____
**Joseph Sobecki**

6

## <u>SERVICE LIST</u>

**MetroHealth System, Jennifer Rodgers, and Daniella Caudle**
c/o John A. Favret III
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.favret@tuckerellis.com

**MetroHealth System, Jennifer Rodgers, and Daniella Caudle**
c/o Taylor Gill
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: tayler.gill@tuckerellis.com

IN THE COURT OF COMMON PLEAS OF CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **Michael Dodsworth** | ) |
| | ) Case Number: CV-24-998581 |
| Plaintiff, | ) |
| vs. | ) Judge: Jeffrey P. Saffold |
| | ) |
| **MetroHealth System, Jennifer Rogers,** | ) |
| **Fallon Forbush, Pete Harness, Marcus** | ) |
| **King, Bryan Brown, Charles Toles, Steven** | ) |
| **Gall, Adam Doyle, Nathan Moldaver,** | ) |
| **Ryan Pleau, John Doe 1, Jane Doe 2, John** | ) |
| **Doe 3** | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

---

## AMENDED COMPLAINT

1. Plaintiff Michael Dodsworth ("Dodsworth") files this action to redress his involuntary apprehension by police officers and subsequent confinement in a hospital and/or mental health facility operated by Defendant MetroHealth System for a period of ten days. This confinement has had a profound negative impact on Dodsworth. Said detriment has manifested itself in multiple ways, including loss of earning potential and emotional distress, for which Dodsworth has incurred medical bills.

2. For the purpose of clarity, each count is delineated against each Defendant. For example, count I alleges false imprisonment against multiple Defendants. Count 1(A) is directed at the first Defendant, while Count 1(E) is directed at the fifth Defendant. This naming scheme will enable any party to clearly direct future pleading or filings at specific Defendants.

3. Dodsworth is a resident of Cuyahoga County, Ohio.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to R.C. 2305.01.

5. This Court has concurrent jurisdiction over claims brought pursuant to 42 U.S.C. § 1983.

6. Cuyahoga County, Ohio, is an appropriate venue because all events giving rise to this case occurred within Cuyahoga County, Ohio. Additionally, all parties live or work in Cuyahoga County, Ohio.

## DEFENDANTS

7. MetroHealth System ("MetroHealth") is a public hospital system operating in Ohio.

8. Jennifer Rogers ("Rogers") is employed by MetroHealth. Upon information and belief, she is employed as a social worker.

9. Fallon Forbush ("Forbush") is a police officer employed by MetroHealth.

10. Pete Harness ("Harness") is a police officer employed by MetroHealth.

11. Marcus King ("King") is a police officer employed by MetroHealth.

12. Bryan Brown ("Brown") is a police officer employed by MetroHealth.

13. Charles Toles ("Toles") is a police officer employed by MetroHealth.

14. Steven Gall ("Gall") is a police officer employed by MetroHealth.

15. Adam Doyle ("Doyle") is a police officer employed by MetroHealth.

16. Nathan Moldaver ("Moldaver") is a police officer employed by MetroHealth.

17. Ryan Pleau ("Pleau") is a police officer employed by MetroHealth.

18. John Doe 1 is employed by MetroHealth. Upon information and belief, he is employed as a nurse or medical assistant.

19. Jane Doe 2 is employed by MetroHealth. Upon information and belief, she is employed as a nurse.

2

20. John Doe 3 is employed by MetroHealth. Upon information and belief, he is employed as a nurse or physician.

## RELEVANT INDIVIDUALS

21. Pareena Singh, M.D. ("Singh") is a physician and/or resident employed by MetroHealth.

22. Danielle Caudle ("Caudle") is a physician employed by MetroHealth.

## FACTS

23. Dodsworth lived alone with his dog and had been day drinking alcohol and consuming tetrahydrocannabinol ("THC") on or about April 11, 2024.

24. On or about April 11, 2024, Dodsworth did not respond to a welfare check. Dodsworth was subsequently taken by ambulance to the emergency department of MetroHealth from his home in Cleveland Heights, Ohio.

25. The distance between Dodsworth's home and MetroHealth was approximately 1.3 miles.

26. Dodsworth was admitted to the MetroHealth emergency room on April 11, 2024, while wearing sleepwear without undergarments. Dodsworth also did not have shoes, a cell phone, his wallet, or a watch.

27. Upon information and belief, MetroHealth performed toxicology tests on Dodsworth on or about April 11, 2024. These test showed the presence of ethanol, THC, and benzodiazepine, which was administered by MetroHealth.

28. Dodsworth was discharged from MetroHealth's emergency department in the morning on April 12, 2024.

29. At the time of his discharge, Dodsworth told MetroHealth that he was waiting for his former neighbor to return to pick him up.

30. Dodsworth was discharged from MetroHalth while wearing the same sleepwear without undergarments that he was wearing when he was admitted. Likewise, Dodsworth did not have shoes, a cell phone, his wallet, or a watch upon his discharge from MetroHealth on April 12, 2024.

31. Dodsworth waited without disturbance for approximately ninety (90) minutes in the MetroHealth emergency department waiting room.

32. Dodsworth waited in a connected portion of the waiting room that can be best described as an "annex," set apart from the majority of the seating in the waiting room.

33. After approximately ninety (90) minutes, Dodsworth was approached by MetroHealth police officers Forbush, Harness, and King. They confronted Dodsworth about why he was still in the waiting room. Dodsworth told them that he was waiting for a ride.

34. Forbush, Harness, and King were MetroHealth police officers.

35. Other MetroHealth employees gathered in the waiting room, including social worker Rogers. Dodsworth repeated that he was waiting for his ride. In response to questioning, Dodsworth advised he was not suicidal and had no thoughts of harming anyone.

36. Forbush, Harness, King, and Rogers did not disengage from Dodsworth. Said Defendants remained in close proximity to Dodsworth while talking among themselves about Dodsworth.

37. At no point were transportation arrangements, such as a taxi or rideshare, suggested or offered for the approximately 1.3 mile trip to Dodsworth's home in Cleveland Heights, Ohio.

38. At some point Dodsworth harmlessly engaged the group of employees observing him, including MetroHealth police. Shortly thereafter, without warning, Forbush, Harness, and

4

King forcibly removed Dodsworth from his seat, strapped Dodsworth horizontally on a gurney, and removed him from the waiting room.

39. Dodsworth non-violently resisted being strapped on the gurney by sliding from his seat to the floor.

40. Dodsworth was forcibly lifted from the floor by the arms and legs by Forbush, Harness, and King and placed on the gurney (the "Restraint").

41. Upon information and belief, Rogers (or potentially another MetroHealth employee), at or about the time of the Restraint, injected Dodsworth with benzodiazepine sufficient to render him unconscious, and later hallucinate.

42. Upon information and belief, Dodsworth was moved to a different MetroHealth facility or department at some point during his confinement.

43. On or about April 13, 2024, Dodsworth awoke from sedation and attempted to flee. MetroHealth subsequently placed Dodsworth in an isolation room.

44. On April 17, 2024, five days and three court days after Dodsworth's Confinement began, an affidavit for emergency hospitalization under R.C. 5122.01(B) and R.C. 5122.10 was executed by Singh. It is unknown when Singh's evaluation under R.C. 5122.10(E) took place.

45. On or about April 17, 2024, Dodsworth was materially asked by a MetroHealth physician if he "wanted to go down to the psych ward" from the sixth floor, where he had been confined since April 12, 2024.

46. Subsequently, Dodsworth was transferred by ambulance to a different MetroHealth facility and was not permitted to return to his home until the evening of April 22, 2024, after MetroHealth arranged a taxi to return him to his home.

5

## GENERAL ALLEGATIONS

47. MetroHealth operates a private police department that is authorized to exercise public police functions.

48. MetroHealth is liable for the actions of its employees and/or agents.

49. Individual Defendants were at all relevant times functioning as employees or agents of MetroHealth in a way calculated to facilitate or promote MetroHealth's business within the course and normal scope of their employment.

50. Individual police defendants were at all times also functioning as agents of the State of Ohio performing public police functions.

### COUNT I – FALSE IMPRISONMENT
**METROHEALTH - COUNT I(A)**
**ROGERS - COUNT I(B)**
**JOHN DOE 1 – COUNT I(C)**
**JANE DOE 2 – COUNT I(D)**
**JOHN DOE 3 – COUNT I(E)**

51. Dodsworth reiterates paragraphs 23-50.

52. Dodsworth was in the custody and control of MetroHealth from Friday, April 12, 2024, until the evening of Monday, April 22, 2024 (the "Confinement").

53. MetroHealth forcibly detained Dodsworth against his will during the ten-day Confinement.

54. MetroHealth police officers Forbush, Harness, and King physically detained Dodswoth and strapped him to a gurney in the waiting room.

55. Rogers directed or consented to Dodsworth's Confinement.

56. Dodsworth did not have access to visitors, communication, or the outside world at any point during the Confinement.

57. Dodsworth was not notified of the possible duration of the Confinement, what medical criteria was being assessed, or what legal rights Dodsworth had, or did not have, in relation to the Confinement.

58. MetroHealth did not have authority or privilege to forcibly continue to confine Dodsworth, against his will, for the entirety of the Confinement, regardless of whether MetroHealth had authority or privilege to forcibly remove Dodsworth from the waiting room on April 12, 2024, or detain him for a limited period following an evaluation under R.C. 5122.10(E).

59. Dodsworth was not a threat to MetroHealth, himself, or any other person at the time of the Restraint.

60. Dodsworth verbally and physically demonstrated his desire to be released at various times during the Confinement.

61. MetroHealth knew, or should have known, that there was no privilege justifying Dodsworth's continued Confinement for ten days.

62. Dodsworth complied with some MetroHealth demands during the Confinement because he reasonably feared further detainment and administration of unknown drugs.

63. Singh, Caudle, John Doe 1, Jane Doe 2, and John Doe 3 participated in and continued Dodsworth's confinement.

64. Upon information and belief, a written statement was not provided to MetroHealth by an individual authorized under R.C. 5122.10(A)(1) to initiate an emergency hospitalization of Dodsworth under R.C. 5122.10 on April 12, 2025. Singh's affidavit was executed on April 17, 2025, and does not specify the circumstances under which Dodsworth was detained on April 12, 2025.

65. Dodsworth was not voluntarily admitted pursuant to R.C. 5122.02, other than potentially for the three court days following Singh's evaluation.

66. Upon information and belief, an affidavit under R.C. 5122.11 was not filed.

67. A court did not issue a temporary order of detention applicable to Dodsworth.

68. MetroHealth violated R.C. 5122.10(E) because it sought to initiate emergency hospitalization on April 17, 2025. Even had MetroHealth properly initiated emergency hospitalization on Friday April 12, 2025, Dodsworth was required to have been evaluated no later than Sunday April 14, 2025, and released no later than Wednesday April 17, 2025. Lack of release under these circumstances violated R.C. 5122.10(E).

69. Upon information and belief, the statutory procedure for involuntary confinement in Ohio as defined by Chapter 5122 of the Ohio Revised Code was not followed.

**COUNT II – BATTERY**
**METROHEALTH - COUNT II(A)**
**ROGERS - COUNT II(B)**

70. Dodsworth reiterates paragraphs 23-69.

71. The purposeful contact with Dodsworth by those MetroHealth employees who were not police officers while forcibly removing Dodsworth from a chair in the waiting room, constraining him to a gurney, and injecting him with a substance believed to be benzodiazepine on April 12, 2024, was harmful, offensive, and humiliating.

72. Dodsworth did not consent to be removed from the waiting room, strapped to a gurney, or injected with any substances.

**COUNT III – ASSAULT**
**METROHEALTH - COUNT III(A)**
**ROGERS - COUNT III(B)**

73. Dodsworth reiterates paragraphs 23-72.

8

74. MetroHealth's purposeful conduct in the waiting room by MetroHealth employees who were not police officers prior to the Confinement caused Dodsworth reasonable apprehension of an imminent attack on his person. Said conduct includes, but is not limited to, multiple armed police officers and other employees surrounding Dodsworth in the waiting room where he was sitting, materially blocking Dodsworth's exit.

### COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**METROHEALTH - COUNT IV(A)**
**JOHN DOE 1 – COUNT IV(D)**
**JANE DOE 2 – COUNT IV(B)**

75. Dodsworth reiterates paragraphs 23-74.

76. Dodsworth was treated without his consent during his Confinement. Each instance of said treatment caused the Confinement to become increasingly extreme and outrageous.

77. Treatment that Dodsworth did not consent to during the Confinement includes, but is not limited to, the forced administration of various drugs, frequent blood draws, and the shaving of Dodsworth's head.

78. In one specific instance on or about April 16, 2024, Dodsworth was covering his head with a pillowcase to block bright fluorescent lights that were never turned off in Dodsworth's room. Jane Doe 2 came in and told Dodsworth to remove the pillowcase from his face so she could draw blood. Dodsworth responded and cooperated by making his arm available, while briefly removing the pillowcase to reveal his face. Jane Doe 2 pulled the pillowcase away from Dodsworth's face at which point Dodsworth sought to pull the pillow back. Jane Doe 2 instructed MetroHealth police officers Doyle, Moldaver, and Pleau to restrain Dodsworth. They jumped on top of Dodsworth, wrestling him, and then forcibly strapped Dodsworth's hands and feet to the bed. Jane Doe 2's actions and instructions to

9

MetroHealth police officers caused Dodsworth to reasonably apprehend increased violence and detention if he continued to struggle.

79. Dodsworth's hand restraints were so short, he could not adjust his body position or scratch his head for more than six hours.

80. Although a subsequent ultrasound did not show evidence of deep vein thrombosis, the restraint on Dodsworth's left leg was so tight that the limb has not returned to normal functioning as of the date of this filing.

81. In another specific instance, on or about April 15, 2024, Dodsworth fainted after a blood draw. Upon information and belief, a "Code Stroke" was called by MetroHealth. Dodsworth regained consciousness to John Doe 3 twisting his right areola (nipple) piercing with extreme force, causing Dodsworth to cry out in pain.

82. John Doe 3's action caused Dodsworth's piercing to become inflamed and infected.

## COUNT V – MEDICAL NEGLIGENCE
### METROHEALTH - COUNT V(A)
### JOHN DOE 3 – COUNT V(B)

83. Dodsworth reiterates paragraphs 23-82.

84. Unknown physicians employed by MetroHealth were responsible for medically treating Dodsworth during his confinement.

85. Singh is a physician responsible for treating Dodsworth during the Confinement.

86. Caudle is a physician responsible for treating Dodsworth during the Confinement.

87. MetroHealth was responsible for treating Dodsworth during his confinement because it is vicariously responsible for the actions of its employee physicians.

88. To the extent that John Doe 3 is a physician, he is responsible for his medical treatment of Dodsworth during the Confinement. If John Doe 3 is not a physician, he is not named in this count.

89. There is a recognized standard of medical care governing Dodsworth's medical treatment from doctors of medicine ("M.D.) and doctors of osteopathic medicine (D.O.) during the Confinement.

90. Upon information and belief, Dodsworth was administered benzodiazepine on or about April 12, 2025.

91. Unknown physicians breached the standard of care through their participation in the improper administration of drugs, including, but not limited to, benzodiazepine and valium without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

92. Singh breached the standard of care by failing to follow the procedures for emergency hospitalization under R.C. 5122.01(B) and R.C. 5122.10 when she executed the affidavit of emergency hospitalization on April 17, 2025, five days and three court days after Dodsworth's Confinement began.

93. Caudle breached the standard of care through her participation in the improper administration of drugs, including, but not limited to, benzodiazepine and valium without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

94. John Doe 3 breached the standard of care through his participation in the improper administration of drugs, including, but not limited to, benzodiazepine and valium without

a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

95. Dodsworth was harmed as a result of the aforementioned actions because drugs were put into his system against his will and his freedom of movement was curtailed against his will during the Confinement.

### COUNT VI – MEDICAL NEGLIGENCE
**METROHEALTH - COUNT VI(A)**
**ROGERS - COUNT VI(B)**
**JOHN DOE 1 – COUNT VI(C)**
**JANE DOE 2 – COUNT VI(D)**
**JOHN DOE 3 – COUNT VI(E)**

96. Dodsworth reiterates paragraphs 23-82.

97. Rogers, John Doe 1, and Jane Doe 2 are non-physicians responsible for treating Dodsworth during the Confinement under the supervision of physicians employed by MetroHealth.

98. To the extent that John Doe 3 is a non-physician, he is responsible for his treatment of Dodsworth during the Confinement. If John Doe 3 is a physician, he is not named in this count.

99. MetroHealth was responsible for treating Dodsworth during his confinement because it is vicariously responsible for the actions of its non-physician employees.

100.    There is a recognized standard of medical care governing Dodsworth's medical treatment during the Confinement.

101.    Unknown non-physician employees breached the standard of care through their participation in the improper administration of drugs, including, but not limited to, benzodiazepine and valium without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

102.     Rogers breached the standard of care through her participation in the improper administration of drugs without a factual basis on or about April 12, 2024, and the unlawful detainment of Dodsworth against his will.

103.     John Doe 1 breached the standard of care by through his participation in the improper administration of various drugs without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will. Additionally, on or about April 13, 2024, John Doe 1 lifted Dodsworth's waistband to improperly view Dodsworth genitals without proper notification or warning.

104.     Jane Doe 2 breached the standard of care through her participation in the improper administration of various drugs without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

105.     John Doe 3 breached the standard of care through his participation in the improper administration of various drugs without a factual basis, duplicative testing, manipulation of Dodsworth's body piercings, and the unlawful detainment of Dodsworth against his will.

106.     Dodsworth was harmed as a result of the aforementioned actions because drugs were involuntarily put into his system and his freedom of movement was constrained against his will during the Confinement.

## COUNT VII – NEGLIGENT HIRING AND SUPERVISION (METROHEALTH)

107.     Dodsworth reiterates paragraphs 23-106.

108.     MetroHealth employees, including but not limited to the named Defendants, committed various aforementioned acts against Dodsworth.

109.     There was an employer-employee relationship between MetroHealth and each of the named Defendants and otherwise referenced employees in this case.

13

110.     MetroHealth is liable for the actions of its employees.

111.     Each Defendant and otherwise referenced employee was incompetent as evidenced by the aforementioned actions taken against Dodsworth.

112.     MetroHealth had actual or constructive notice of the incompetence of its employees because it had actual or constructive knowledge of the actions that its employees took against Dodsworth.

113.     Each named Defendant and otherwise referenced employees caused Dodsworth damage pursuant the aforementioned actions described in this Complaint.

114.     MetroHealth's hiring of the named Defendants and otherwise referenced employees was the proximate cause of Dodsworth injuries because Dodsworth would not have been detained or injured had the Defendants and otherwise referenced employees not acted incompetently.

**COUNT VIII – 42 U.S.C. § 1983 UNCONSTITUTIONAL SEIZURE AND
UNREASONABLE USE OF FORCE
FORBUSH – COUNT VIII(A)
HARNESS – COUNT VIII(B)
KING – COUNT VIII(C)**

115.     This claim is brought against MetroHealth police officers Forbush, Harness, and King (collectively the initial "Officers" for purposes of this claim) in their individual capacity pursuant to 42 U.S.C. § 1983.

116.     The Officers are persons as defined by 42 U.S.C. Section 1983.

117.     At all times material, the Officers acted under the color of state law because the actions of the Officers occurred while each was exercising the police authority given to them by MetroHealth and the State of Ohio.

14

118.     At all times material, the Officers were state actors performing a public function as police officers.

119.     It is clearly established that Dodsworth has a right to be secure from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

120.     Dodsworth reiterates the factual allegations contained in paragraphs 23-72.

121.     The actions of the Officers directly resulted in Dodsworth being removed from the hospital waiting room, strapped to a gurney, injected with a drug, seized, and detained against his will—without contact with the outside world for ten days—from April 12, 2024, until April 22, 2024.

122.     Dodsworth was not arrested.

123.     The Officers did not act reasonably and violated clearly established federal law by forcibly detaining Dodsworth without warning on April 12, 2025.

124.     Upon information and belief, the procedures set forth for involuntary confinement in Ohio were not followed before or after Dodsworth's apprehension.

### COUNT IX – 42 U.S.C. § 1983 CONTINUED UNCONSTITUTIONAL SEIZURE AND UNREASONABLE USE OF FORCE
**BROWN – COUNT IX(A)**
**TOLES – COUNT IX (B)**
**GALL – COUNT IX (C)**

125.     This claim is brought against MetroHealth police officers Brown, Toles, and Gall. (collectively the "Officers" for purposes of count IX) in their individual capacity pursuant to 42 U.S.C. § 1983.

126.     The Officers are persons as defined by 42 U.S.C. Section 1983.

15

127.    At all times material, the Officers acted under the color of state law because the actions of the Officers occurred while each was exercising the police authority given to them by MetroHealth and the State of Ohio.

128.    At all times material, the Officers were state actors performing a public function as police officers.

129.    It is clearly established that Dodsworth has a right to be secure from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

130.    Dodsworth reiterates the factual allegations contained in paragraphs 23-72.

131.    On or about April 13, 2024, the Officers were dispatched to stop Dodworth from leaving the Confinement.

132.    The Officers physically escorted Dodsworth back to a room in order to continue the Confinement.

133.    After escorting Dodsworth back to a room, the Officers forcibly held Dodsworth to enable the forced administration of drugs.

134.    Dodsworth was not under arrest.

135.    The Officers did not act reasonably and violated clearly established federal law by forcibly continuing the Confinement and using force to enable the forced administration of drugs.

136.    Upon information and belief, the procedures set forth for involuntary confinement in Ohio were not followed before or after Dodsworth's initial apprehension.

16

## COUNT X – 42 U.S.C. § 1983 CONTINUED UNCONSTITUTIONAL SEIZURE AND UNREASONABLE USE OF FORCE
### DOYLE – COUNT X (A)
### MOLDAVER – COUNT X (B)
### PLEAU – COUNT X (C)

137.  This claim is brought against MetroHealth police officers Doyle, Moldaver, and Pleau (collectively the "Officers" for purposes of count X) in their individual capacity pursuant to 42 U.S.C. § 1983.

138.  The Officers are persons as defined by 42 U.S.C. Section 1983.

139.  At all times material, the Officers acted under the color of state law because the actions of the Officers occurred while each was exercising the police authority given to them by MetroHealth and the State of Ohio.

140.  At all times material, the Officers were state actors performing a public function as police officers.

141.  It is clearly established that Dodsworth has a right to be secure from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

142.  Dodsworth reiterates the factual allegations contained in paragraphs 23-72.

143.  On or about April 16, 2024, the Officers were dispatched to restrain Dodsworth.

144.  Dodsworth was not under arrest.

145.  The Officers force held Dodsworth in order to continue the Confinement and enable the unreasonable forced administration of drugs.

146.  Upon information and belief, the procedures set forth for involuntary confinement in Ohio were not followed before or after Dodsworth's initial apprehension.

## **DAMAGES**

147.     Dodsworth's home was entered by his legally separated wife, Alexandria Kung ("Kung"), and potentially other third parties during the Confinement. Dodsworth's property was taken. Dodsworth would not have consented to the taking of his property had he been at his home.

148.     As a direct and proximate result of Defendants' actions, Dodsworth suffered bodily injury, physical pain, discomfort, emotional distress, anxiety, mental anguish, incurred direct and indirect medical and hospital expenses, economic loss, lost wages, lost earning potential, and has suffered a loss of enjoyment of life, which will continue into the future.

149.     As a direct and proximate result of Defendants' actions, Dodsworth has been disgraced, labeled mentally ill, a danger to himself and others, and subjected to embarrassment and humiliation. Dodsworth has suffered serious physical and mental anguish as a result.

150.     The forced administration of drugs caused Dodsworth to hallucinate and take actions that were severely humiliating. These actions include, but are not limited to, sexually touching himself in the presence of others.

151.     Dodsworth was required by MetroHealth employees to remove his body piercings. He was not able to reinsert all body piercings after he arrived back at his home April 22, 2024. Dodsworth had maintained these body piercings for more than twenty (20) years.

152.     Dodsworth emotional distress from the aforementioned incidents has caused significant loss of enjoyment of life.

153.     Dodsworth has attempted to alleviate his physical and emotional distress. He has incurred medical bills in doing so.

18

154.     Dodsworth emotional distress from the aforementioned incidents has caused loss of earning potential and otherwise economic loss.

## JURY DEMAND

155.     Dodsworth demands a trial by jury on all issues.

## RELIEF REQUESTED

156.     Compensatory damages against each Defendant, jointly and severally, in an amount in excess of $25,000.00.

157.     Punitive damages against each Defendant, jointly and severally, in an amount in excess of $25,000.00.

158.     Recovery of all costs incurred in the instant case.

159.     Prejudgment interest on any judgment beginning on April 12, 2024.

160.     An award of reasonable attorney fees based on the aforementioned bad faith acts of the Defendants described in this complaint.

161.     An award of reasonable attorney fees for counts VIII, IX, and X based on 42 U.S.C. 1988(b).

162.     Any other relief deemed just and equitable.

WHEREFORE, Dodsworth respectfully requests that this Court enter a judgment with the relief requested.

Dated: August 8, 2025

19

Respectfully submitted,

_Joseph Sobecki_

**Joseph Sobecki**
Ohio Bar Number: 101714
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Direct: (419) 283-9282
Office: (419) 242-9908
Facsimile: (419) 242-9937
Email: joseph@josephsobecki.com
*Attorney for Plaintiff, Michael Dodsworth*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via electronic mail on August 8, 2025, to all counsel or parties of record on the service list below.

_Joseph Sobecki_

**Joseph Sobecki**

## SERVICE LIST

**MetroHealth System and Jennifer Rodgers**
c/o John A. Favret III
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.favret@tuckerellis.com

**MetroHealth System and Jennifer Rodgers**
c/o Taylor Gill
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: tayler.gill@tuckerellis.com

20

IN THE COURT OF COMMON PLEAS OF CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **Michael Dodsworth** | ) |
| | ) Case Number: CV-24-998581 |
| Plaintiff, | ) |
| vs. | ) Judge: Jeffrey P. Saffold |
| | ) |
| **MetroHealth System,** *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## <u>AMENDED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT INSTANTER</u>

Plaintiff Michael Dodsworth ("Dodsworth") files this Amended Motion for Leave to File Amended Complaint Instanter pursuant to Civ.R. 15(A) and LR 9(C)(2). This amended motion corrects approximately six typographical and grammatical errors that cumulatively weighed in favor of correction. No other changes have been made from the Motion filed on August 8, 2025. In support of the instant Motion, Dodsworth states as follows:

## <u>BACKGROUND</u>

On June 7, 2024, Dodsworth filed a pro se complaint against MetroHealth System ("MetoHealth"), Jennifer Rogers, John Doe 1-7, and Daniella Caudle, each named individual defendant being an employee of MetroHealth. Pl. Compl. On November 15, 2024, the undersigned appeared on behalf of Dodsworth. Pl. Notice of Appearance. On January 12, 2025, this Court entered a case management order setting trial on December 8, 2025. Case Management Order.

## <u>ARGUMENT</u>

**THIS COURT HAS DISCRETION TO GRANT THE INSTANT MOTION.**

A party may amend its pleading once as a matter of right within twenty-eight days of a responsive pleading and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires."  Civ.R. 15(A). "The language of Civ. R. 15(A) favors a liberal policy when the trial judge is confronted with a motion to amend a pleading beyond the time limit when such amendments are automatically allowed." *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 121-122 (1991).

There are two main reasons why a trial court may deny a motion for leave to amend under Civ.R. 15(A). First, "[a] trial court may properly deny a motion for leave to amend a complaint if the amendment would be futile*." Weiler v. Osborn Eng. Co.*, 2023-Ohio-619, ¶ 20 (8th Dist.). Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)...." *Panther Partners Inc. v. Ikanos Communs., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

    A.    **The proposed amended complaint is not futile.**

Here, the amended complaint is not futile. "Ohio's Political Subdivision Tort Liability Act (R.C. Chapter 2744) absolves political subdivisions employees, including police officers, of tort liability, subject to certain exceptions. Pursuant to R.C. 2744.03(A)(6)(b), an employee of a political subdivision is immune from liability unless the employee's 'acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.' " *Carter v. Officer Hymes*, 2020-Ohio-3967, ¶ 24 (8th Dist.). "A political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C.

2744.02(B) applies." *Friga v. City of E. Cleveland*, 2007-Ohio-1716, ¶ 27 (8th Dist.) (quoting *Reno v. City of Centerville*, 2004 Ohio 781, ¶ 5 (2nd Dist.). "It is well settled that a suit against an employee of a political subdivision in the employee's official capacity is an action against the entity itself." *Crenshaw v. City of Cleveland Police Dept.*, 2022-Ohio-3915, ¶ 15 (8th Dist.) Plaintiff's pro se complaint alleges tort claims against the police officers in their official capacity. Pl. Compl. at 4-5.  Although Plaintiff does not concede this issue and reserves the right to argue it in the future, it appears that "MetroHealth is a political subdivision." *Jones v. MetroHealth Med. Ctr.*, 2017-Ohio-7329, ¶ 22 (8th Dist.); *see also Johnson v. Ohio Supreme Court,* 156 Fed.Appx. 779, 779 (6th Cir. 2005) (stating the same). Given that Plaintiff must prove an exception to R.C. 2744.02(B) to overcome MetroHealth's likely immunity as it relates to the MetroHealth police officers, Plaintiff elects to proceed under federal law as it relates to claims against the MetroHealth police officers. These claims under federal law protect the Plaintiff encase the Plaintiff must prove an exception to R.C. 2744.02(B) in order to prevail against any defendant on Plaintiff's tort claims.

In order to state a viable claim under federal law, the officers must be named in their personal, rather than official capacity.[1] It is well settled that "[t]he doctrine of respondeat superior

---

[1] In exchange for MetroHealth promptly providing the names of the police officers, Plaintiff's counsel agreed to drop Defendant Dr. Daniella Caudle as a named defendant from an earlier version of the amended complaint that is not before this Court. Counsel made this decision unilaterally due to the inability to confer with Mr. Dodsworth over an extended period of time. The undersigned voluntarily adheres to this agreement in the amended complaint before this Court. However, critically, Plaintiff *must* seek further leave to add every individual that took part in Dodsworth's confinement (likely in excess of fifty individuals) if MetroHealth asserts that it has a complete immunity defense to tort claims that would not otherwise be available against individually named non-police officer MetroHealth employees. Specifically, it *may* be that Dodsworth must demonstrate an exception to R.C. 2744.02(B) in order to prevail against MetroHealth (even pertaining to vicarious liability), but must only demonstrate an easier to prove exception under R.C. 2744.03(A)(6) or (7) to prevail against any individually named defendant if vicarious liability does not apply to the state tort claims in the same way that it does not apply to § 1983 claims. If MetroHealth seeks to raise this argument at any point, including as part of any appeal, post-trial motion, or dispositive trial motion, Plaintiff requests that MetroHealth notify the

does not apply in § 1983 lawsuits to impute liability upon supervisory personnel; rather, in order to find a supervisor liable, a plaintiff must allege that he condoned, encouraged, or knowingly acquiesced in the alleged misconduct." *Lozano v. Corr. Corp. of Am.*, 23 F. App'x 348, 350 (6th Cir. 2001). Plaintiff is not presently in possession of any evidence to suggest a viable claim for municipal liability as it relates to the police officers' actions under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (holding municipal liability under § 1983 requires evidence of a widespread custom or policy that was the driving force behind the violation.). Section 1983 claims against public employees in their official capacity are the equivalent to claims against the governmental entity for whom they work…." *Hiles v. Franklin Cty. Bd. of Commrs.*, 2006-Ohio-16, ¶ 20 (10th Dist.). The MetroHealth police officers must be named in their personal capacity in order to assert a viable claim under § 1983, therefore the amended complaint naming the officers in their personal capacity is not futile.

**B.**    **The Defendants will not be unduly prejudiced by the proposed amended complaint.**

A second main reason why a trial court may deny a motion for leave to amend would be if the proposed amendment(s) unduly prejudices the defendant(s). *See Franciscan Communities, Inc. v. Rice*, 2021-Ohio-1729, ¶ 31 (8th Dist.). The Defendants in this matter will not be prejudiced for multiple reasons. First, since Plaintiff retained counsel in this matter the parties have been

---

Plaintiff as soon as possible so that Plaintiff may plan to seek further leave to add each necessary person individually as a defendant. As long as MetroHealth does not intend to make such an argument at any point, Plaintiff does not seek to add each and every person individually as a defendant. Further, Plaintiff is not presently in possession of the names of each and every individual who participated in the claims described in the proposed amended complaint. Additional discovery is needed to uncover this information. However, should this case proceed to dispositive motion briefing or trial, in order to avoid legal error, it may be absolutely necessary as a matter of law for Plaintiff to seek leave to add each and every individual responsible for the acts described in Dodsworth's proposed amended complaint as an individual defendant—whether Plaintiff or the undersigned counsel wishes to do so or not.

discussing an amended complaint. The present pro se complaint before this Court names ten defendants, including seven John Doe defendants. The pro se complaint raises ten causes of actions. However, many of these causes of actions are actually more than one cause of action shoehorned into a single count. For example, the first cause of action is for false imprisonment, civil assault, and battery. Pl. Compl. at 5-6. After consulting with counsel, Dodsworth agrees that count one of his pro se complaint should have been split into three counts—(1) false imprisonment, (2) assault, and (3) battery. Other counts include the same issue, for example, count eight (8) alleges publication of private facts, intrusion upon seclusion, false light, breach of implied contract, and slander in a single count. *Id*. at 7-8. The aforementioned organization of the complaint makes it extremely difficult for both parties to litigate this matter and direct filings at specific counts or defendants. The amended complaint solves this issue because it will enable any party to direct dispositive motions at specific defendants or counts.

MetroHealth may argue that it is unduly prejudiced by the new § 1983 counts. Plaintiff asserts that MetroHealth is not unduly prejudiced because it has been in possession of a materially similar proposed amended complaint since on or about June 27, 2025.[2] The only material difference between the proposed amended complaint provided to MetroHealth on June 27, 2025, and the amended complaint before this Court are proposed counts nine and ten, which are additional § 1983 counts against various MetroHealth police officers related to incidents pertaining to Plaintiff's confinement on different days. As previously stated, Plaintiff must plead § 1983

---

[2] MetroHealth has consistently acted in good faith at all times pertinent and, upon information and belief, was willing to provide Plaintiff written permission to file an amended complaint. However, Plaintiff seeks to add additional § 1983 counts (counts IX and X), that were not known to MetroHealth at the time it considered Plaintiff's request for written permission to file an amended complaint.

claims against each MetroHealth police officer in his individual capacity or risk waiving any claims against the MetroHealth police officers.

## CONCLUSION

Plaintiff respectfully requests that this Court liberally consider and then grant the instant Motion permitting Plaintiff to file the proposed amended complaint instanter. The proposed amended complaint will move this case closer to a resolution and will provide MetroHealth the opportunity to swiftly remove this case to the United States District Court for the Northern District of Ohio—should it elect to do so. Plaintiff's proposed amended complaint is attached pursuant to LR 9(C)(3). A proposed order is also attached should the Court wish to adopt it.

Dated: August 11, 2025

Respectfully submitted,

*Joseph Sobecki*
**Joseph Sobecki**
Ohio Bar Number: 101714
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Direct: (419) 283-9282
Office: (419) 242-9908
Facsimile: (419) 242-9937
Email: joseph@josephsobecki.com
*Attorney for Plaintiff, Michael Dodsworth*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via electronic mail on August 11, 2025, to all counsel or parties of record on the service list below.

*Joseph Sobecki*
**Joseph Sobecki**

## <u>SERVICE LIST</u>

**MetroHealth System, Jennifer Rodgers, and Daniella Caudle**
c/o John A. Favret III
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.favret@tuckerellis.com

**MetroHealth System, Jennifer Rodgers, and Daniella Caudle**
c/o Taylor Gill
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: tayler.gill@tuckerellis.com

IN THE COURT OF COMMON PLEAS OF CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **Michael Dodsworth** ) | |
| ) | Case Number: CV-24-998581 |
| Plaintiff, ) | |
| vs. ) | Judge: Jeffrey P. Saffold |
| ) | |
| **MetroHealth System, Jennifer Rogers,** ) | |
| **Fallon Forbush, Pete Harness, Marcus** ) | |
| **King, Bryan Brown, Charles Toles, Steven** ) | |
| **Gall, Adam Doyle, Nathan Moldaver,** ) | |
| **Ryan Pleau, John Doe 1, Jane Doe 2, John** ) | |
| **Doe 3** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

---

### AMENDED COMPLAINT

1. Plaintiff Michael Dodsworth ("Dodsworth") files this action to redress his involuntary apprehension by police officers and subsequent confinement in a hospital and/or mental health facility operated by Defendant MetroHealth System for a period of ten days. This confinement has had a profound negative impact on Dodsworth. Said detriment has manifested itself in multiple ways, including loss of earning potential and emotional distress, for which Dodsworth has incurred medical bills.

2. For the purpose of clarity, each count is delineated against each Defendant. For example, count I alleges false imprisonment against multiple Defendants. Count 1(A) is directed at the first Defendant, while Count 1(E) is directed at the fifth Defendant. This naming scheme will enable any party to clearly direct future pleading or filings at specific Defendants.

3. Dodsworth is a resident of Cuyahoga County, Ohio.

## JURISDICTION AND VENUE

4.  This Court has original jurisdiction pursuant to R.C. 2305.01.

5.  This Court has concurrent jurisdiction over claims brought pursuant to 42 U.S.C. § 1983.

6.  Cuyahoga County, Ohio, is an appropriate venue because all events giving rise to this case occurred within Cuyahoga County, Ohio. Additionally, all parties live or work in Cuyahoga County, Ohio.

## DEFENDANTS

7.  MetroHealth System ("MetroHealth") is a public hospital system operating in Ohio.

8.  Jennifer Rogers ("Rogers") is employed by MetroHealth. Upon information and belief, she is employed as a social worker.

9.  Fallon Forbush ("Forbush") is a police officer employed by MetroHealth.

10. Pete Harness ("Harness") is a police officer employed by MetroHealth.

11. Marcus King ("King") is a police officer employed by MetroHealth.

12. Bryan Brown ("Brown") is a police officer employed by MetroHealth.

13. Charles Toles ("Toles") is a police officer employed by MetroHealth.

14. Steven Gall ("Gall") is a police officer employed by MetroHealth.

15. Adam Doyle ("Doyle") is a police officer employed by MetroHealth.

16. Nathan Moldaver ("Moldaver") is a police officer employed by MetroHealth.

17. Ryan Pleau ("Pleau") is a police officer employed by MetroHealth.

18. John Doe 1 is employed by MetroHealth. Upon information and belief, he is employed as a nurse or medical assistant.

19. Jane Doe 2 is employed by MetroHealth. Upon information and belief, she is employed as a nurse.

20. John Doe 3 is employed by MetroHealth. Upon information and belief, he is employed as a nurse or physician.

## RELEVANT INDIVIDUALS

21. Pareena Singh, M.D. ("Singh") is a physician and/or resident employed by MetroHealth.

22. Danielle Caudle ("Caudle") is a physician employed by MetroHealth.

## FACTS

23. Dodsworth lived alone with his dog and had been day drinking alcohol and consuming tetrahydrocannabinol ("THC") on or about April 11, 2024.

24. On or about April 11, 2024, Dodsworth did not respond to a welfare check. Dodsworth was subsequently taken by ambulance to the emergency department of MetroHealth from his home in Cleveland Heights, Ohio.

25. The distance between Dodsworth's home and MetroHealth was approximately 1.3 miles.

26. Dodsworth was admitted to the MetroHealth emergency room on April 11, 2024, while wearing sleepwear without undergarments. Dodsworth also did not have shoes, a cell phone, his wallet, or a watch.

27. Upon information and belief, MetroHealth performed toxicology tests on Dodsworth on or about April 11, 2024. These test showed the presence of ethanol, THC, and benzodiazepine, which was administered by MetroHealth.

28. Dodsworth was discharged from MetroHealth's emergency department in the morning on April 12, 2024.

29. At the time of his discharge, Dodsworth told MetroHealth that he was waiting for his former neighbor to return to pick him up.

30. Dodsworth was discharged from MetroHalth while wearing the same sleepwear without undergarments that he was wearing when he was admitted. Likewise, Dodsworth did not have shoes, a cell phone, his wallet, or a watch upon his discharge from MetroHealth on April 12, 2024.

31. Dodsworth waited without disturbance for approximately ninety (90) minutes in the MetroHealth emergency department waiting room.

32. Dodsworth waited in a connected portion of the waiting room that can be best described as an "annex," set apart from the majority of the seating in the waiting room.

33. After approximately ninety (90) minutes, Dodsworth was approached by MetroHealth police officers Forbush, Harness, and King. They confronted Dodsworth about why he was still in the waiting room. Dodsworth told them that he was waiting for a ride.

34. Forbush, Harness, and King were MetroHealth police officers.

35. Other MetroHealth employees gathered in the waiting room, including social worker Rogers. Dodsworth repeated that he was waiting for his ride. In response to questioning, Dodsworth advised he was not suicidal and had no thoughts of harming anyone.

36. Forbush, Harness, King, and Rogers did not disengage from Dodsworth. Said Defendants remained in close proximity to Dodsworth while talking among themselves about Dodsworth.

37. At no point were transportation arrangements, such as a taxi or rideshare, suggested or offered for the approximately 1.3 mile trip to Dodsworth's home in Cleveland Heights, Ohio.

38. At some point Dodsworth harmlessly engaged the group of employees observing him, including MetroHealth police. Shortly thereafter, without warning, Forbush, Harness, and

King forcibly removed Dodsworth from his seat, strapped Dodsworth horizontally on a gurney, and removed him from the waiting room.

39. Dodsworth non-violently resisted being strapped on the gurney by sliding from his seat to the floor.

40. Dodsworth was forcibly lifted from the floor by the arms and legs by Forbush, Harness, and King and placed on the gurney (the "Restraint").

41. Upon information and belief, Rogers (or potentially another MetroHealth employee), at or about the time of the Restraint, injected Dodsworth with benzodiazepine sufficient to render him unconscious, and later hallucinate.

42. Upon information and belief, Dodsworth was moved to a different MetroHealth facility or department at some point during his confinement.

43. On or about April 13, 2024, Dodsworth awoke from sedation and attempted to flee. MetroHealth subsequently placed Dodsworth in an isolation room.

44. On April 17, 2024, five days and three court days after Dodsworth's Confinement began, an affidavit for emergency hospitalization under R.C. 5122.01(B) and R.C. 5122.10 was executed by Singh. It is unknown when Singh's evaluation under R.C. 5122.10(E) took place.

45. On or about April 17, 2024, Dodsworth was materially asked by a MetroHealth physician if he "wanted to go down to the psych ward" from the sixth floor, where he had been confined since April 12, 2024.

46. Subsequently, Dodsworth was transferred by ambulance to a different MetroHealth facility and was not permitted to return to his home until the evening of April 22, 2024, after MetroHealth arranged a taxi to return him to his home.

5

## GENERAL ALLEGATIONS

47. MetroHealth operates a private police department that is authorized to exercise public police functions.

48. MetroHealth is liable for the actions of its employees and/or agents.

49. Individual Defendants were at all relevant times functioning as employees or agents of MetroHealth in a way calculated to facilitate or promote MetroHealth's business within the course and normal scope of their employment.

50. Individual police defendants were at all times also functioning as agents of the State of Ohio performing public police functions.

### COUNT I – FALSE IMPRISONMENT
**METROHEALTH - COUNT I(A)**
**ROGERS - COUNT I(B)**
**JOHN DOE 1 – COUNT I(C)**
**JANE DOE 2 – COUNT I(D)**
**JOHN DOE 3 – COUNT I(E)**

51. Dodsworth reiterates paragraphs 23-50.

52. Dodsworth was in the custody and control of MetroHealth from Friday, April 12, 2024, until the evening of Monday, April 22, 2024 (the "Confinement").

53. MetroHealth forcibly detained Dodsworth against his will during the ten-day Confinement.

54. MetroHealth police officers Forbush, Harness, and King physically detained Dodswoth and strapped him to a gurney in the waiting room.

55. Rogers directed or consented to Dodsworth's Confinement.

56. Dodsworth did not have access to visitors, communication, or the outside world at any point during the Confinement.

57. Dodsworth was not notified of the possible duration of the Confinement, what medical criteria was being assessed, or what legal rights Dodsworth had, or did not have, in relation to the Confinement.

58. MetroHealth did not have authority or privilege to forcibly continue to confine Dodsworth, against his will, for the entirety of the Confinement, regardless of whether MetroHealth had authority or privilege to forcibly remove Dodsworth from the waiting room on April 12, 2024, or detain him for a limited period following an evaluation under R.C. 5122.10(E).

59. Dodsworth was not a threat to MetroHealth, himself, or any other person at the time of the Restraint.

60. Dodsworth verbally and physically demonstrated his desire to be released at various times during the Confinement.

61. MetroHealth knew, or should have known, that there was no privilege justifying Dodsworth's continued Confinement for ten days.

62. Dodsworth complied with some MetroHealth demands during the Confinement because he reasonably feared further detainment and administration of unknown drugs.

63. Singh, Caudle, John Doe 1, Jane Doe 2, and John Doe 3 participated in and continued Dodsworth's confinement.

64. Upon information and belief, a written statement was not provided to MetroHealth by an individual authorized under R.C. 5122.10(A)(1) to initiate an emergency hospitalization of Dodsworth under R.C. 5122.10 on April 12, 2025. Singh's affidavit was executed on April 17, 2025, and does not specify the circumstances under which Dodsworth was detained on April 12, 2025.

65. Dodsworth was not voluntarily admitted pursuant to R.C. 5122.02, other than potentially for the three court days following Singh's evaluation.

66. Upon information and belief, an affidavit under R.C. 5122.11 was not filed.

67. A court did not issue a temporary order of detention applicable to Dodsworth.

68. MetroHealth violated R.C. 5122.10(E) because it sought to initiate emergency hospitalization on April 17, 2025. Even had MetroHealth properly initiated emergency hospitalization on Friday April 12, 2025, Dodsworth was required to have been evaluated no later than Sunday April 14, 2025, and released no later than Wednesday April 17, 2025. Lack of release under these circumstances violated R.C. 5122.10(E).

69. Upon information and belief, the statutory procedure for involuntary confinement in Ohio as defined by Chapter 5122 of the Ohio Revised Code was not followed.

**COUNT II – BATTERY**
**METROHEALTH - COUNT II(A)**
**ROGERS - COUNT II(B)**

70. Dodsworth reiterates paragraphs 23-69.

71. The purposeful contact with Dodsworth by those MetroHealth employees who were not police officers while forcibly removing Dodsworth from a chair in the waiting room, constraining him to a gurney, and injecting him with a substance believed to be benzodiazepine on April 12, 2024, was harmful, offensive, and humiliating.

72. Dodsworth did not consent to be removed from the waiting room, strapped to a gurney, or injected with any substances.

**COUNT III – ASSAULT**
**METROHEALTH - COUNT III(A)**
**ROGERS - COUNT III(B)**

73. Dodsworth reiterates paragraphs 23-72.

8

74. MetroHealth's purposeful conduct in the waiting room by MetroHealth employees who were not police officers prior to the Confinement caused Dodsworth reasonable apprehension of an imminent attack on his person. Said conduct includes, but is not limited to, multiple armed police officers and other employees surrounding Dodsworth in the waiting room where he was sitting, materially blocking Dodsworth's exit.

### COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### METROHEALTH - COUNT IV(A)
### JOHN DOE 1 – COUNT IV(D)
### JANE DOE 2 – COUNT IV(B)

75. Dodsworth reiterates paragraphs 23-74.

76. Dodsworth was treated without his consent during his Confinement. Each instance of said treatment caused the Confinement to become increasingly extreme and outrageous.

77. Treatment that Dodsworth did not consent to during the Confinement includes, but is not limited to, the forced administration of various drugs, frequent blood draws, and the shaving of Dodsworth's head.

78. In one specific instance on or about April 16, 2024, Dodsworth was covering his head with a pillowcase to block bright fluorescent lights that were never turned off in Dodsworth's room. Jane Doe 2 came in and told Dodsworth to remove the pillowcase from his face so she could draw blood. Dodsworth responded and cooperated by making his arm available, while briefly removing the pillowcase to reveal his face. Jane Doe 2 pulled the pillowcase away from Dodsworth's face at which point Dodsworth sought to pull the pillow back. Jane Doe 2 instructed MetroHealth police officers Doyle, Moldaver, and Pleau to restrain Dodsworth. They jumped on top of Dodsworth, wrestling him, and then forcibly strapped Dodsworth's hands and feet to the bed. Jane Doe 2's actions and instructions to

9

MetroHealth police officers caused Dodsworth to reasonably apprehend increased violence and detention if he continued to struggle.

79. Dodsworth's hand restraints were so short, he could not adjust his body position or scratch his head for more than six hours.

80. Although a subsequent ultrasound did not show evidence of deep vein thrombosis, the restraint on Dodsworth's left leg was so tight that the limb has not returned to normal functioning as of the date of this filing.

81. In another specific instance, on or about April 15, 2024, Dodsworth fainted after a blood draw. Upon information and belief, a "Code Stroke" was called by MetroHealth. Dodsworth regained consciousness to John Doe 3 twisting his right areola (nipple) piercing with extreme force, causing Dodsworth to cry out in pain.

82. John Doe 3's action caused Dodsworth's piercing to become inflamed and infected.

### COUNT V – MEDICAL NEGLIGENCE
### METROHEALTH - COUNT V(A)
### JOHN DOE 3 – COUNT V(B)

83. Dodsworth reiterates paragraphs 23-82.

84. Unknown physicians employed by MetroHealth were responsible for medically treating Dodsworth during his confinement.

85. Singh is a physician responsible for treating Dodsworth during the Confinement.

86. Caudle is a physician responsible for treating Dodsworth during the Confinement.

87. MetroHealth was responsible for treating Dodsworth during his confinement because it is vicariously responsible for the actions of its employee physicians.

88. To the extent that John Doe 3 is a physician, he is responsible for his medical treatment of Dodsworth during the Confinement. If John Doe 3 is not a physician, he is not named in this count.

89. There is a recognized standard of medical care governing Dodsworth's medical treatment from doctors of medicine ("M.D.) and doctors of osteopathic medicine (D.O.) during the Confinement.

90. Upon information and belief, Dodsworth was administered benzodiazepine on or about April 12, 2025.

91. Unknown physicians breached the standard of care through their participation in the improper administration of drugs, including, but not limited to, benzodiazepine and valium without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

92. Singh breached the standard of care by failing to follow the procedures for emergency hospitalization under R.C. 5122.01(B) and R.C. 5122.10 when she executed the affidavit of emergency hospitalization on April 17, 2025, five days and three court days after Dodsworth's Confinement began.

93. Caudle breached the standard of care through her participation in the improper administration of drugs, including, but not limited to, benzodiazepine and valium without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

94. John Doe 3 breached the standard of care through his participation in the improper administration of drugs, including, but not limited to, benzodiazepine and valium without

11

a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

95. Dodsworth was harmed as a result of the aforementioned actions because drugs were put into his system against his will and his freedom of movement was curtailed against his will during the Confinement.

**COUNT VI – MEDICAL NEGLIGENCE**
**METROHEALTH - COUNT VI(A)**
**ROGERS - COUNT VI(B)**
**JOHN DOE 1 – COUNT VI(C)**
**JANE DOE 2 – COUNT VI(D)**
**JOHN DOE 3 – COUNT VI(E)**

96. Dodsworth reiterates paragraphs 23-82.

97. Rogers, John Doe 1, and Jane Doe 2 are non-physicians responsible for treating Dodsworth during the Confinement under the supervision of physicians employed by MetroHealth.

98. To the extent that John Doe 3 is a non-physician, he is responsible for his treatment of Dodsworth during the Confinement. If John Doe 3 is a physician, he is not named in this count.

99. MetroHealth was responsible for treating Dodsworth during his confinement because it is vicariously responsible for the actions of its non-physician employees.

100.    There is a recognized standard of medical care governing Dodsworth's medical treatment during the Confinement.

101.    Unknown non-physician employees breached the standard of care through their participation in the improper administration of drugs, including, but not limited to, benzodiazepine and valium without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

102.     Rogers breached the standard of care through her participation in the improper administration of drugs without a factual basis on or about April 12, 2024, and the unlawful detainment of Dodsworth against his will.

103.     John Doe 1 breached the standard of care by through his participation in the improper administration of various drugs without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will. Additionally, on or about April 13, 2024, John Doe 1 lifted Dodsworth's waistband to improperly view Dodsworth genitals without proper notification or warning.

104.     Jane Doe 2 breached the standard of care through her participation in the improper administration of various drugs without a factual basis, duplicative testing, and the unlawful detainment of Dodsworth against his will.

105.     John Doe 3 breached the standard of care through his participation in the improper administration of various drugs without a factual basis, duplicative testing, manipulation of Dodsworth's body piercings, and the unlawful detainment of Dodsworth against his will.

106.     Dodsworth was harmed as a result of the aforementioned actions because drugs were involuntarily put into his system and his freedom of movement was constrained against his will during the Confinement.

## COUNT VII – NEGLIGENT HIRING AND SUPERVISION (METROHEALTH)

107.     Dodsworth reiterates paragraphs 23-106.

108.     MetroHealth employees, including but not limited to the named Defendants, committed various aforementioned acts against Dodsworth.

109.     There was an employer-employee relationship between MetroHealth and each of the named Defendants and otherwise referenced employees in this case.

13

110.     MetroHealth is liable for the actions of its employees.

111.     Each Defendant and otherwise referenced employee was incompetent as evidenced by the aforementioned actions taken against Dodsworth.

112.     MetroHealth had actual or constructive notice of the incompetence of its employees because it had actual or constructive knowledge of the actions that its employees took against Dodsworth.

113.     Each named Defendant and otherwise referenced employees caused Dodsworth damage pursuant the aforementioned actions described in this Complaint.

114.     MetroHealth's hiring of the named Defendants and otherwise referenced employees was the proximate cause of Dodsworth injuries because Dodsworth would not have been detained or injured had the Defendants and otherwise referenced employees not acted incompetently.

**COUNT VIII – 42 U.S.C. § 1983 UNCONSTITUTIONAL SEIZURE AND UNREASONABLE USE OF FORCE**
**FORBUSH – COUNT VIII(A)**
**HARNESS – COUNT VIII(B)**
**KING – COUNT VIII(C)**

115.     This claim is brought against MetroHealth police officers Forbush, Harness, and King (collectively the initial "Officers" for purposes of this claim) in their individual capacity pursuant to 42 U.S.C. § 1983.

116.     The Officers are persons as defined by 42 U.S.C. Section 1983.

117.     At all times material, the Officers acted under the color of state law because the actions of the Officers occurred while each was exercising the police authority given to them by MetroHealth and the State of Ohio.

14

118.     At all times material, the Officers were state actors performing a public function as police officers.

119.     It is clearly established that Dodsworth has a right to be secure from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

120.     Dodsworth reiterates the factual allegations contained in paragraphs 23-72.

121.     The actions of the Officers directly resulted in Dodsworth being removed from the hospital waiting room, strapped to a gurney, injected with a drug, seized, and detained against his will—without contact with the outside world for ten days—from April 12, 2024, until April 22, 2024.

122.     Dodsworth was not arrested.

123.     The Officers did not act reasonably and violated clearly established federal law by forcibly detaining Dodsworth without warning on April 12, 2025.

124.     Upon information and belief, the procedures set forth for involuntary confinement in Ohio were not followed before or after Dodsworth's apprehension.

### COUNT IX – 42 U.S.C. § 1983 CONTINUED UNCONSTITUTIONAL SEIZURE AND UNREASONABLE USE OF FORCE
### BROWN – COUNT IX(A)
### TOLES – COUNT IX (B)
### GALL – COUNT IX (C)

125.     This claim is brought against MetroHealth police officers Brown, Toles, and Gall. (collectively the "Officers" for purposes of count IX) in their individual capacity pursuant to 42 U.S.C. § 1983.

126.     The Officers are persons as defined by 42 U.S.C. Section 1983.

127.     At all times material, the Officers acted under the color of state law because the actions of the Officers occurred while each was exercising the police authority given to them by MetroHealth and the State of Ohio.

128.     At all times material, the Officers were state actors performing a public function as police officers.

129.     It is clearly established that Dodsworth has a right to be secure from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

130.     Dodsworth reiterates the factual allegations contained in paragraphs 23-72.

131.     On or about April 13, 2024, the Officers were dispatched to stop Dodworth from leaving the Confinement.

132.     The Officers physically escorted Dodsworth back to a room in order to continue the Confinement.

133.     After escorting Dodsworth back to a room, the Officers forcibly held Dodsworth to enable the forced administration of drugs.

134.     Dodsworth was not under arrest.

135.     The Officers did not act reasonably and violated clearly established federal law by forcibly continuing the Confinement and using force to enable the forced administration of drugs.

136.     Upon information and belief, the procedures set forth for involuntary confinement in Ohio were not followed before or after Dodsworth's initial apprehension.

### COUNT X – 42 U.S.C. § 1983 CONTINUED UNCONSTITUTIONAL SEIZURE AND UNREASONABLE USE OF FORCE
### DOYLE – COUNT X (A)
### MOLDAVER – COUNT X (B)
### PLEAU – COUNT X (C)

137.     This claim is brought against MetroHealth police officers Doyle, Moldaver, and Pleau (collectively the "Officers" for purposes of count X) in their individual capacity pursuant to 42 U.S.C. § 1983.

138.     The Officers are persons as defined by 42 U.S.C. Section 1983.

139.     At all times material, the Officers acted under the color of state law because the actions of the Officers occurred while each was exercising the police authority given to them by MetroHealth and the State of Ohio.

140.     At all times material, the Officers were state actors performing a public function as police officers.

141.     It is clearly established that Dodsworth has a right to be secure from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

142.     Dodsworth reiterates the factual allegations contained in paragraphs 23-72.

143.     On or about April 16, 2024, the Officers were dispatched to restrain Dodsworth.

144.     Dodsworth was not under arrest.

145.     The Officers force held Dodsworth in order to continue the Confinement and enable the unreasonable forced administration of drugs.

146.     Upon information and belief, the procedures set forth for involuntary confinement in Ohio were not followed before or after Dodsworth's initial apprehension.

## **DAMAGES**

147.     Dodsworth's home was entered by his legally separated wife, Alexandria Kung

("Kung"), and potentially other third parties during the Confinement. Dodsworth's

property was taken. Dodsworth would not have consented to the taking of his property had

he been at his home.

148.     As a direct and proximate result of Defendants' actions, Dodsworth suffered bodily

injury, physical pain, discomfort, emotional distress, anxiety, mental anguish, incurred

direct and indirect medical and hospital expenses, economic loss, lost wages, lost earning

potential, and has suffered a loss of enjoyment of life, which will continue into the future.

149.     As a direct and proximate result of Defendants' actions, Dodsworth has been

disgraced, labeled mentally ill, a danger to himself and others, and subjected to

embarrassment and humiliation. Dodsworth has suffered serious physical and mental

anguish as a result.

150.     The forced administration of drugs caused Dodsworth to hallucinate and take

actions that were severely humiliating. These actions include, but are not limited to,

sexually touching himself in the presence of others.

151.     Dodsworth was required by MetroHealth employees to remove his body piercings.

He was not able to reinsert all body piercings after he arrived back at his home April 22,

2024. Dodsworth had maintained these body piercings for more than twenty (20) years.

152.     Dodsworth emotional distress from the aforementioned incidents has caused

significant loss of enjoyment of life.

153.     Dodsworth has attempted to alleviate his physical and emotional distress. He has

incurred medical bills in doing so.

18

154.     Dodsworth emotional distress from the aforementioned incidents has caused loss of earning potential and otherwise economic loss.

**JURY DEMAND**

155.     Dodsworth demands a trial by jury on all issues.

**RELIEF REQUESTED**

156.     Compensatory damages against each Defendant, jointly and severally, in an amount in excess of $25,000.00.

157.     Punitive damages against each Defendant, jointly and severally, in an amount in excess of $25,000.00.

158.     Recovery of all costs incurred in the instant case.

159.     Prejudgment interest on any judgment beginning on April 12, 2024.

160.     An award of reasonable attorney fees based on the aforementioned bad faith acts of the Defendants described in this complaint.

161.     An award of reasonable attorney fees for counts VIII, IX, and X based on 42 U.S.C. 1988(b).

162.     Any other relief deemed just and equitable.

WHEREFORE, Dodsworth respectfully requests that this Court enter a judgment with the relief requested.

Dated: August 8, 2025

Respectfully submitted,

*[signature]*

**Joseph Sobecki**
Ohio Bar Number: 101714
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Direct: (419) 283-9282
Office: (419) 242-9908
Facsimile: (419) 242-9937
Email: joseph@josephsobecki.com
*Attorney for Plaintiff, Michael Dodsworth*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via electronic mail on August 8, 2025, to all counsel or parties of record on the service list below.

*[signature]*

**Joseph Sobecki**

## SERVICE LIST

**MetroHealth System and Jennifer Rodgers**
c/o John A. Favret III
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.favret@tuckerellis.com

**MetroHealth System and Jennifer Rodgers**
c/o Taylor Gill
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113-0000
Office: (216) 592-5000
Facsimile: (216) 592-5009
Email: tayler.gill@tuckerellis.com



200621872

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

MICHAEL DODSWORTH
    Plaintiff

Case No: CV-24-998581

Judge: JEFFREY P SAFFOLD

METROHEALTH SYSTEM, ET AL
    Defendant

## **JOURNAL ENTRY**

PLAINTIFF MICHAEL DODSWORTH'S AMENDED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT INSTANTER, FILED 08/11/2025, IS UNOPPOSED AND GRANTED.

PLAINTIFF'S AMENDED COMPLAINT IS HEREBY DEEMED FILED AS OF 08/26/2025.

IT IS SO ORDERED.

 

_____
Judge Signature            08/27/2025

08/26/2025